THE UNION MARKET NATIONAL BANK OF WATERTOWN *vs.* NONANTUM INVESTMENT COMPANY & another.

Middlesex. February 7, 1934. — July 5, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, & DONAHUE, JJ.

*Contract*, Construction. *Damages*, For breach of contract. *Interest.*

A promise by the plaintiff in a suit in equity to make a certain payment to the defendant in case the plaintiff should not "secure in said cause a final decree" granting certain relief, became absolute when the bill was dismissed without prejudice for want of prosecution; hearing on the merits was not a prerequisite.

In an action on a surety bond, where the plaintiff's damages exceeded the penal sum, he was entitled to recover the penal sum with interest thereon from the time of breach.

CONTRACT. Writ dated January 14, 1933.

The action was heard in the Superior Court by *Fosdick*, J., without a jury.

The case was submitted on briefs.

*A. C. Walton & J. Finelli*, for the defendants.

*D. Burstein & V. C. Brink*, for the plaintiff.

DONAHUE, J. The plaintiff bank held a note of the defendant investment company and, as collateral security therefor, certain notes and mortgages which had been assigned to the bank by instruments purporting to be signed by the investment company by its treasurer. The bank

having notified the investment company that it proposed to foreclose and sell the collateral, the company filed a bill in equity in the Superior Court alleging that the assignments of the notes and mortgages had been executed without authority from the company and praying that the sale of the collateral be enjoined, the instruments of assignment cancelled and the securities held as collateral surrendered. Thereafter while that suit was pending an arrangement was made whereby the bank assigned and delivered to the investment company the notes and mortgages which it had been holding as security and the company delivered to the bank a written agreement hereinafter described, and a bond signed by it and by the defendant surety company conditioned on the performance by the investment company of its covenants in the written agreement. When, at a later time, the investment company's bill in equity was reached for trial, no one appeared representing it and the court ordered that a decree be entered dismissing the bill without prejudice. No appeal was taken. The investment company, however, filed a petition for leave to file a bill of review, which petition after hearing was denied. Later the company filed another bill in equity against the bank, the contents of which do not appear in the record. After three demurrers to this bill and to amendments thereof had been sustained, a motion of the company was allowed amending the suit into an action at law and that action is now pending. The declaration therein alleges a conversion of the securities which the bank had held as collateral and had delivered to the investment company when the written agreement and the bond were executed and delivered.

The declaration in the present action alleges a breach of the bond given to secure the performance by the investment company of the covenants in its written agreement. It was tried on a case stated before a judge of the Superior Court who found for the plaintiff and assessed damages in the penal sum of the bond with interest from the date of the breach, at which time, as the judge found, there was due the bank under the written agreement an amount larger than the penal sum of the bond. He ordered that execution issue

for the amount of damages assessed and for costs.   Both defendants appealed.

The determination of the question whether there was a breach of the bond depends upon the construction to be given to the language of the bond and the language of the agreement to which the bond refers and relates.   The bond recites the filing of the bill of complaint by the investment company and its execution of the agreement in order "to secure possession of the said notes and mortgages pending the final determination of said case."   The condition of the bond was that the investment company "shall duly and punctually perform all its covenants and obligations of said agreement."   The written agreement recites the filing of the bill of complaint and the desire of the investment company "to secure possession of the said notes and mortgages pending the final determination of the said case by giving its bond to the said Bank."   The only covenants which the written agreement purports to express are covenants of the investment company.   It provides that the investment company, in consideration of the delivery of the collateral, "covenants and agrees with the said Bank as follows: 1.   That the delivery of said notes and mortgages shall be without prejudice to the rights of either party in said pending cause . . . .   2.   If the said . . . Investment Company does not secure in said cause a final decree of the court cancelling said assignments and directing the said . . . Bank . . . to turn over to the . . . Investment Company the said . . . notes and mortgages mentioned in said bill, the said . . . Investment Company shall within thirty (30) days after final decree in said pending cause denying such relief pay to the said Bank any balance remaining unpaid" on the note held by the bank.

The agreement and the bond must be read together (*Goewey* v. *Sanborn*, 277 Mass. 168, 169) as a whole, without undue emphasis on any particular part (*Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 375), in the light of the circumstances of the parties at the time the instruments were executed and delivered (*Morse* v. *Boston*, 260 Mass. 255, 262) and the object sought

to be accomplished (*Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 473).

In construing the instruments the situation of the parties at the time of their execution must be given weight. The bank had notified the company of its purpose to sell the collateral which it held as security for the note. Thereupon the company had brought a bill in equity seeking the cancellation of the assignments of the securities to the bank as collateral and their return to the company. The only question presented by the bill was whether the collateral had been assigned and delivered to the bank by one acting with authority from the company. There is nothing in the record tending to indicate that any other or further litigation was contemplated. The bill which the company had brought afforded full opportunity for the final determination of the only issue between the company and the bank. The bank sought no change in the situation; it apparently was content to continue to hold the collateral and await the termination of the pending proceeding. At the instance and for the benefit of the investment company a different arrangement was made. The company proposed that, in advance of the termination of the pending proceeding, the bank should surrender to it the notes and mortgages which constituted the subject matter of that suit. In the statement of agreed facts it is recited that "This the Bank agreed to do provided that other security was substituted to be held by the Bank pending the determination of said suit. In accordance with the foregoing arrangement the bond and agreement . . . were executed." The arrangement made was in essence a substitution of security. It was consummated by the exchange of the written agreement and bond, for written assignments of the collateral held by the bank and the delivery of the collateral itself to the company. It is manifest that the object sought to be accomplished by the arrangement was merely the substitution of one security for another, leaving the settlement of the issue between the parties to rest upon the outcome of the bill in equity then pending. After as well as before the new arrangement was made, the company

as plaintiff in the bill in equity would, in the event of a trial, have the burden of proving that the notes and mortgages, which were the original security, had been delivered to the bank without its authority.   If no new arrangement had been made, upon the termination of the pending litigation in any manner other than by a decree in favor of the investment company, the bank would have been free to realize on its security.

We think that the result is no different under the terms of the written agreement which with the bond constituted the substituted security.   It is there provided that the investment company would pay the balance due the bank on its note if the company did "not secure in said cause a final decree of the court" cancelling the assignments of the original collateral to the bank and directing the bank to turn over the collateral.   In view of the object sought to be accomplished by the written agreement and the circumstances attendant on its execution, we think that the instrument must be construed as manifesting the intent of the parties that upon a termination of the pending proceedings under the bill in equity by a decree which did not grant to the company the relief which it sought, the substituted security of the written agreement and the bond should become available to the bank.   The agreement sets the time within which the investment company, if it did not secure a final decree in its favor,. should pay the balance due on its note, as "within thirty (30) days after final decree in said pending cause denying such relief."   Any decree dismissing a bill in equity in effect denies the plaintiff the relief sought in that particular proceeding.   In view of the affirmative undertaking of the investment company in the agreement to secure a decree granting relief and the manifest object of the parties, we do not think that the words fixing the time within which payment must be made can be construed as negativing the construction herein given to the agreement as a whole.

We cannot agree with the defendants' contention that the instruments should be construed as manifesting the intention of the parties that liability on the bond should exist only upon the final determination of the cause of action of

the investment company, that is, upon the determination on the merits of the matter in controversy or subject of difference between the parties, as distinguished from the termination of the proceedings in the particular bill in equity which was pending when the instruments were executed. The contention is based largely on certain references in the agreement to the pending proceeding as the "cause" and "said pending cause." It is true that the proceeding is so referred to in places in the agreement, but both agreement and bond also refer to it as the "case." For instance, the bond recites that the agreement was executed "to secure possession of the said notes and mortgages pending the final determination of said case." The agreed facts identify "The pending cause or bill of complaint referred to in said agreement" as the particular bill in equity which was pending when the written agreement was executed. We do not think that the instruments may reasonably be construed otherwise than as manifesting the intent that the obligation under the bond should attach when a final decree was entered dismissing that bill. The proceeding pending when the instruments in question were delivered was terminated by a final decree dismissing the bill. As there had been no hearing on the merits the decree properly provided that the dismissal was without prejudice. *Corey* v. *Tuttle,* 249 Mass. 135, 139. The decree was nevertheless a final disposition of that particular proceeding. *Wight* v. *Wight,* 272 Mass. 154, 157.

The damages sustained by the plaintiff exceeded the penal sum of the bond. The judge therefore rightly ruled that the plaintiff was entitled to recover the penal sum of the bond with interest thereon from the time of the default. *Bank of Brighton* v. *Smith,* 12 Allen, 243, 253, and cases cited; *Brown* v. *London & Lancashire Indemnity Co.* 249 Mass. 511, 516. Judgment is to be entered for the plaintiff in the penal sum of the bond with interest from the time of the default, and execution is to issue for that sum with costs.

*So ordered.*