GEORGE M. BRYNE *vs.* CITY OF GLOUCESTER.

Essex.    December 9, 1936. — March 31, 1937.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Contract,* Construction, Building contract, Of indemnity. *Words,* "Act, omission or neglect."

One contracting with a city to dig a tunnel under buildings and to save the city harmless from claims against it arising from any "act, omission or neglect" on his part, was not liable for sums paid by the city to the owner of the buildings for damage to them caused "inevitably" by his blasting and in no way due to negligence on his part where it appeared that, after the making of the contract but before he began his work the city without his knowledge or consent procured the necessary easement from the landowner and agreed with him that, in the event of inevitable or necessary damage it would restore the buildings to their former condition.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated June 25, 1934.

The suit was reported to this court by Williams, J.

*F. H. Tarr,* for the plaintiff.

*C. W. Wonson,* City Solicitor, for the defendant, submitted a brief.

QUA, J. On May 7, 1927, the plaintiff contracted with the defendant to construct a sewer in the defendant city. The city retained a portion of the contract price until the plaintiff should complete the contract and out of the sum so retained made certain payments to one Low and to one Stapleton for injury to their buildings as the result of blasting by the plaintiff in the course of the work. The issue at the trial of this suit was whether, under the contract between the plaintiff and the defendant, the ultimate loss due to these payments should fall upon the plaintiff or upon the defendant.

Pertinent facts are established by stipulation of the parties: Part of the work included in the contract was the construction of a tunnel, mostly through solid rock, under the premises of Low and Stapleton. After the making of the original contract, the defendant, without the knowledge or consent of the plaintiff, made agreements with Low and with Stapleton by which the city acquired the necessary easements through their lands and also agreed in the event of inevitable or necessary damage to restore the buildings to their former condition. The plaintiff performed the work "with extreme care and with no negligence," and any damage to the buildings "was caused inevitably by necessary blasting operations and was not in any way due to his lack of due care." The contract between the plaintiff and the defendant contained this paragraph:

"The Contractor shall indemnify and save harmless the City, . . . from and against all claims, demands, payments, suits, actions, recoveries and judgments of every nature and description . . . brought or recovered against it . . . by reason of any act, omission or neglect of the said Contractor, his agents or employees, in carrying on the work . . . ."

The defendant requested the trial judge to rule in substance that this provision required the plaintiff to indemnify the defendant with respect to any act of the plaintiff in carrying on the work, causing damage or loss to a third person, including not only loss due to negligence, but also loss which was inevitable by reason of the construction of the tunnel, and that accordingly the plaintiff could not recover. The judge declined so to rule and ruled instead that the word "act" in the contract "means only an improper or negligent act or acts, and if the plaintiff Bryne was not guilty in carrying on this work of any improper or negligent acts, he is not bound to indemnify and save harmless the said city for the damages alleged in this case." It is stated in the report of the trial judge that the case is reported "as provided in said stipulation," and that "If my ruling is right, decree is to issue ordering the defendant city to pay to the plaintiff" certain sums, and that "If my ruling is in error, decree is to issue dismissing the plaintiff's bill of complaint."

It follows that the only question before us is as to the correctness of the judge's ruling in construing the contract. If this depended upon whether the words "any act, omission or neglect of said Contractor" should in general be confined to improper or negligent acts, we should probably have little difficulty in saying that full effect must be given to the words "any act," and that the indemnity is not limited to the consequences of acts which are improper or negligent. *Farrell* v. *Eastern Bridge & Structural Co.* 291 Mass. 323, 325. See *New York Central Railroad* v. *William Culkeen & Sons Co.* 249 Mass. 71, 75; *Clarke* v. *Ames,* 267 Mass. 44, 46; *Bray* v. *Hickman,* 263 Mass. 409, 414. But neither the stipulation of the parties nor the ruling of the judge should be construed *in vacuo* or as mere abstractions. We must treat both as framed with reference to the live issues disclosed in this particular case, and we must construe the contract with reference to the situation of the parties when they made it and to the objects sought to be accomplished. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 153. *Kennedy Bros. Inc.* v. *Bird,* 287 Mass. 477, 483. *Union*

*Market National Bank of Watertown* v. *Nonantum Invest-
ment Co.* 291 Mass. 439, 441–442.

It is not disputed that under the contract the plaintiff
might be required to construct a tunnel on private land.
The parties must have expected that the city would acquire
the necessary rights. This the city could do legally either
by taking the easements by eminent domain under what
is now G. L. (Ter. Ed.) c. 79 (see St. 1925, c. 224, § 4), or
by securing them by gift or purchase. The acquisition of
these rights in some manner would naturally antedate the
performing by the contractor of any "act" upon the land.
If the city should proceed by eminent domain, it would
acquire the right to do all things necessary to complete the
work, including the right to inflict "inevitable" damage
upon the buildings, and the landowners would acquire
valid claims against the city for all damages, including such
injury to the buildings as would be inevitable. *Dodge* v.
*County Commissioners,* 3 Met. 380. *White* v. *Medford,* 163
Mass. 164. *Sheehan* v. *Fall River,* 187 Mass. 356. In such
case the owners' claims against the city would exist to their
full extent as soon as the taking should be completed, even
though the contractor had at that time done no work at
all. See now G. L. (Ter. Ed.) c. 79, § 3; *Davis* v. *New
Bedford,* 133 Mass. 549; *Briggs* v. *Boston,* 230 Mass. 148;
*Meisel Press Manuf. Co.* v. *Boston,* 272 Mass. 372, 379.
Those claims would arise from the taking by the city and
not "by reason of any act" of the contractor as those words
are used in the contract. We think that so far as concerns
the construction of the contract the situation is essentially
the same where, as here, the city chose to buy the necessary
rights from the landowners. The city acquired substantially
the same rights in the lands which it would have acquired
by a taking, and the landowners immediately acquired rights
against the city which arose out of their agreements with
the city and not "by reason of any act" of the contractor,
who at that time may have performed no act. They ac-
quired no additional claims against anyone when their
buildings were in fact injured by the blasting, except that a
contingent term of their agreements with the city then be-

came operative, and they became entitled to recover from the city thereunder. If we were interpreting the agreements between the landowners and the city, it could in a sense be said that the city's liability for injury to the buildings arose by reason of acts of the contractor which were within the contemplation of the parties to those agreements, but as between the contractor and the city, it arose by reason of the city's agreements with the landowners and was a part of the price which the city paid for the easements.

This becomes plainer when we take into account the further facts that the liability of the city to the landowners arising out of the agreements is a liability to restore the buildings to their original condition; that this liability is different from and may well prove much more burdensome than any ordinary liability for damages which the law would otherwise impose for acts of the contractor; and that these agreements were made after the original contract was executed and without the knowledge or consent of the contractor. The argument is further strengthened when we consider that as a matter of trade with the landowners in order to secure the rights in the land and without the plaintiff's knowledge the city might have bound itself to a great variety of liabilities, having little or no relation to the actual damage done to the buildings. One instance of this would be an agreement to pay liquidated damages determined in advance of any injury and when it could not be known that any damage would be done. We think the parties, when they made the original contract, must have intended that the contractor should indemnify the city against the legal consequences which in the light of then existing conditions and from the nature of the work might naturally follow from the contractor's acts, but not against new and unexpected liabilities which the city might voluntarily assume by future agreements without the contractor's consent.

We are not ready to hold that these claims of these landowners for "inevitable" damages arose "by reason of any act, omission or neglect" of the contractor as those words were used in the indemnity clause of the original

contract. There is ample scope for the operation of those words in their full significance without construing them as applicable to a case like this. The judge rightly declined the ruling requested by the defendant and rightly ruled that the plaintiff "is not bound to indemnify and save harmless the said city for the damages alleged in this case."

In accordance with the stipulation of the parties a final decree is to be entered "ordering the defendant city to pay to the said plaintiff Bryne the sum of $4,000 and interest, amounting to $1,440, on account of the stipulation regarding the claim of Low, and the sum of $525 and interest, amounting to $189, on account of the stipulation entered into with said Stapleton."

*Ordered accordingly.*