DONALD B. HOLBROOK vs. MASSACHUSETTS TURNPIKE
AUTHORITY.

Hampden.    September 24, 1958. — December 8, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN,
WHITTEMORE, & CUTTER, JJ.

*Eminent Domain*, Injury to property without taking, Right to damages,
"Special and peculiar" injury, Tortious injury.  *Massachusetts Turn-
pike Authority.  Public Works.  Actionable Tort.  Negligence*, Con-
struction of public works.  *Act of God.*

St. 1952, c. 354, § 15, gave the owner of a parcel of land, a part of which
had been taken by the Massachusetts Turnpike Authority by eminent
domain, a right to recover from the Authority damages under G. L.
c. 79, §§ 10, 12, for "special and peculiar" injury subsequently caused
to the rest of the parcel by construction work done in the "carrying
out" and the "exercise of" the powers granted to the Authority by
c. 354.  [222–223]

Destruction of a dam, bridge and swimming pool and deposit of fill in a
recreation area when it was inundated during hurricanes by water
surging from a pond across fill placed between the area and the pond
by a contractor of the Massachusetts Turnpike Authority while con-
structing the turnpike authorized by St. 1952, c. 354, properly could
be found to have been "special and peculiar" injuries within G. L.
c. 79, § 12, as distinguished from remote and consequential injuries,
and, if a necessary consequence of the performance of the work as
authorized and not due solely to the hurricanes as acts of God, to have
been caused, within c. 354, § 15, by the "carrying out" and the "exer-
cise of" the powers conferred on the Authority by c. 354.  [223–224]

Damages for injury caused to adjacent land by negligent acts of a con-
tractor constructing a turnpike for the Massachusetts Turnpike Au-
thority pursuant to St. 1952, c. 354, and by trespasses upon and re-
moval of earth from the adjacent land by the contractor would not be
recoverable by the landowner by a petition for assessment of damages
under c. 354, § 15; G. L. c. 79.  [226–228]

PETITION, filed in the Superior Court on June 28, 1956.

The case was tried before *Macaulay*, J.

In this court, the case was argued in September, 1958,
before *Wilkins*, C.J., *Spalding*, *Williams*, *Counihan*, & *Cut-*

*ter,* JJ., and afterwards was submitted on briefs to all the Justices.

*James W. Duffy & Emerson S. Searle,* for the petitioner, submitted a brief.

*John F. Moriarty, (John S. Begley & Charles M. Healey, III,* with him,) for the respondent.

WILKINS, C.J.   This petition for the assessment of damages, brought pursuant to G. L. (Ter. Ed.) c. 79, has been reported upon questions of law following a verdict for the petitioner.   G. L. (Ter. Ed.) c. 231, § 111.

Prior to June 6, 1955, the petitioner was the owner of a tract of land in Palmer containing about thirteen acres developed as a recreation area.   There were a club house and a bath house.   A dam and dike had been erected to impound waters of a brook to form a pond, a filter bed, and a swimming pool.

On June 6 the respondent, acting pursuant to St. 1952, c. 354, made a valid taking in fee of about one acre, occupied by the easterly end of the pond.   Damages for this taking were recovered by the petitioner in another petition under c. 79 which was tried with the one now before us.

The present petition alleges that the respondent, in pursuance of constructing a turnpike and without any formal taking, entered upon the petitioner's land with tractors, "bulldozers," and other large pieces of earth moving machinery, broke and opened dikes and otherwise damaged the land.

In July, 1955, a contractor in performance of a contract with the respondent came upon the land taken and began construction of an access way to the turnpike.   On adjacent property to the east was an ice pond, impounded by a dam belonging to an ice company and located along the petitioner's easterly boundary.   An eighteen inch pipe was in the base of that dam and a spillway on the top discharged water onto the petitioner's property.

The contractor began dumping fill on the land taken from the petitioner and on the ice pond dam, thus blocking the eighteen inch pipe.   When the level of the fill reached the

elevation of the spillway, the contractor laid an eighteen inch temporary pipe along the spillway and across the top of the fill. The contractor continued to raise the level of the fill, and by August 11 its surface was about four feet higher than the top of the ice pond dam. At that time the temporary pipe was the only means of discharging water from the ice pond to the petitioner's remaining land.

A sustained rainy period, due to hurricane "Connie," began on August 11 and continued until August 14. In the Palmer area at least 4.22 inches of rain fell. An expert witness called by the petitioner characterized this storm as a "one year storm," that is, one to be expected on an average of once a year over an extended period. In the course of this storm the flow of water made a breach in the fill, and gouged a channel in the area of the temporary pipe. Fill from this channel was deposited in the petitioner's pond, filter bed, and swimming pool. The petitioner's dam and spillway and a bridge near the dam were left intact, but a breach had been made in a dike between the swimming pool and the pond.

On August 15, 16, and 17 the weather was fair. On August 15 the water in the swimming pool had receded to normal level. The contractor began replacing the washed out fill, and by August 18 fill and pipe had been restored to their former condition.

On August 18 and 19 occurred a second storm, known as hurricane "Diane," which caused extensive damage throughout western Massachusetts. Bridges, roads, and railroad embankments were washed out. The petitioner's expert witness characterized "Diane" as most unusual, as "a one hundred year storm," of the like of which there was no record. During "Diane," water built up behind the fill, and on August 19 began to flow over the top of the fill "along its entire length." Late that afternoon the contractor's workmen began to "bulldoze" a channel in the vicinity of the temporary pipe. When the channel reached a length of about thirty feet, water rushed across the fill, gouging a deeper and wider channel. Water entered the

pond and filter bed, and surged over spillways on the dike between the pond and the swimming pool and on the dam at the end of the pool. The entire area was inundated. The petitioner's dam, bridge, and swimming pool were destroyed, and there was an accumulation of fill in the pond.

The questions of law reported are: (1) Whether the petitioner may recover in this form of proceeding for the damage to his property which occurred in August. (2) Whether the damage occurring in August was damage "in the carrying out" or "in the exercise of" the powers granted to the respondent by St. 1952, c. 354. (3) Whether there was error in the charge. These questions are so interrelated that we shall consider them together.

The judge charged that the basis of the petition is St. 1952, c. 354, which created the respondent. He referred particularly to § 15, which reads: "[2] All private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in its original condition as nearly as practicable, or adequate compensation made therefor, out of funds provided under the authority of this act. . . . [5] Any person damaged in his property by the exercise of any of the powers granted by this act may recover his damages from the Authority under chapter seventy-nine of the General Laws."

General Laws (Ter. Ed.) c. 79, § 10, reads in part: "When the real estate of any person has been taken for the public use or has been damaged by the construction, maintenance, operation, alteration, repair or discontinuance of a public improvement or has been entered for a public purpose, but such taking, entry or damage was not effected by or in accordance with a formal vote or order of the board of officers of a body politic or corporate duly authorized by law . . . and by such taking, damage, entry, seizure, destruction or use he has suffered an injury for which he is entitled to compensation, the damages therefor may be recovered under this chapter."

The respondent relies upon G. L. (Ter. Ed.) c. 79, § 12, the portions reading, "The damages for property taken

under this chapter shall be fixed at the value thereof before the taking, and in case only part of a parcel of land is taken there shall be included damages for all injury to the part not taken caused by the taking or by the public improvement for which the taking is made . . . . In determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel . . . ." It is argued that the only taking was in June, for which the petitioner has been fully compensated; that the taking could not have caused the inundation in August, the damage from which was not to be foreseen by a "hypothetical willing buyer";[1] and that an injury caused by the act or omission of a contractor is not caused by a taking or by the public improvement for which the taking is made. The respondent takes the position that its liability, if any, is in tort.

That c. 79 itself confers no right to damages upon an owner whose property is not taken by eminent domain, but that the c. 79 procedure may be made available by appropriate provision in another statute creating a right to such damages is clear from *Sullivan* v. *Commonwealth*, 335 Mass. 619, 622–626, and *Webster Thomas Co.* v. *Commonwealth*, 336 Mass. 130, 137–138. "The Legislature . . . is not limited in providing compensation to damages which the landowner is entitled to receive as a matter of constitutional right but may extend compensation to instances where an exercise of eminent domain would result in a real hardship to one whose property has been damaged or injured if he were deprived of compensation." *United States Gypsum Co.* v. *Mystic River Bridge Authy.* 329 Mass. 130, 137, and cases cited.

Here St. 1952, c. 354, § 15, defines the respondent's liability, and c. 79 in § 10 provides a procedure for recovery and in § 12 states the measure of damages. We are unable to accept the narrow construction of § 12 put forward by the respondent. To look at the substance, the petitioner

---

[1] See *Epstein* v. *Boston Housing Authy.* 317 Mass. 297, 299; *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 193.

had two causes of action, one for the original taking and another for the August damage. It would be anomalous, and it would, we think, be so unjust as not to be ascribable to legislative intent, to adopt a construction which bars recovery by one suffering "special and peculiar" injury to his land simply because at a previous time a part had been taken by eminent domain.

The language of St. 1952, c. 354, § 15, is broad enough to authorize recovery for damage sustained in August by the petitioner. In our view, we are not dealing with a statute which imposes liability only where a taking is involved. We do not have a case like *Sullivan* v. *Commonwealth*, 335 Mass. 619, where it was held that St. 1938, c. 460, as amended by St. 1946, c. 515, authorizing the metropolitan district water supply commission to take land by eminent domain, did not create liability for special injuries due to rock blasting where no taking was made. We have a statute like those discussed in *United States Gypsum Co.* v. *Mystic River Bridge Authy.* 329 Mass. 130, 138–139, or that involved in *Webster Thomas Co.* v. *Commonwealth*, 336 Mass. 130, 138. In the latter case we held that G. L. (Ter. Ed.) c. 81, § 7, which authorizes recovery "When injury has been caused to the real estate of any person by the laying out or alteration of a state highway," allowed recovery for damage caused by the flooding of the basement of one of the petitioners with rain water after the respondent had razed adjoining buildings. See, for another example, St. 1926, c. 375, § 5.

That the injuries sustained in August might be "special and peculiar" as distinguished from remote and consequential is manifest from many of our decisions. *Dodge* v. *County Commrs. of Essex*, 3 Met. 380, 381–382. *Trowbridge* v. *Brookline*, 144 Mass. 139. *White* v. *Medford*, 163 Mass. 164. *Davenport* v. *Hyde Park*, 178 Mass. 585. *McNamara* v. *Commonwealth*, 184 Mass. 304, 305. *Hyde* v. *Fall River*, 189 Mass. 439, 440–441. *Wine* v. *Commonwealth*, 301 Mass. 451, 458. *Webster Thomas Co.* v. *Commonwealth*, 336 Mass. 130, 138.

We turn to the respondent's contention that the August

injuries were not caused by the taking or by the public improvement for which the taking was made. True, an injury must be the direct result of acts of the respondent authorized by St. 1952, c. 354. See *Klem* v. *Commonwealth*, 301 Mass. 340, 342. But we do not agree that the phrases "in carrying out the powers" or "by the exercise of any of the powers" in § 15, clauses [2] and [5], respectively, refer only to the exercise of such powers which might cause damage as defined in the first sentence of G. L. (Ter. Ed.) c. 79, § 12. If, due to the performance of the work as authorized, the petitioner's property suffered injuries in August during the hurricanes, such damage could be found to have occurred while "carrying out the powers" or "by the exercise of any of the powers" conferred by c. 354, and to be a necessary consequence of doing the authorized work at that time. In this respect it is immaterial that the work was performed by a contractor. *White* v. *Medford*, 163 Mass. 164, 165. But see *Harding* v. *Boston*, 163 Mass. 14, 18–19. On the other hand, if in any event either hurricane would have caused the damage, that is, if the damage was brought about by an act of God and not by any act of the respondent, the result would be otherwise.

Injuries due to negligence would not be authorized and should be redressed in an action of tort, a doctrine first stated in an opinion by Chief Justice Shaw. *Dodge* v. *County Commrs. of Essex*, 3 Met. 380, 383. The petitioner's argument to the contrary is little more than a repetition of the words of § 15. That section, we realize, broadly authorizes the restoration to original condition of "[a]ll private property damaged or destroyed in carrying out the powers granted by this act" or "adequate compensation made therefor." In later cases following the *Dodge* case, the respective statutes therein considered, in substance if not in form, equally broadly permitted the recovery of damages caused during the execution of authorized work. In recent times, at least two such statutes have been before this court and have been construed as subject to the same limitations on the scope of recovery as the statutes considered in the older

cases. See *Klem* v. *Commonwealth*, 301 Mass. 340, 341–342 (St. 1926, c. 375, § 5. St. 1927, c. 321, § 4); *Webster Thomas Co.* v. *Commonwealth*, 336 Mass. 130, 139, (G. L. c. 81, § 7, relating to the "injury . . . caused to . . . real estate . . . by the laying out . . . of a state highway").

In *Westcott* v. *Boston*, 186 Mass. 540, an action of tort was upheld to recover for negligence in the construction and management of a surface water sewer or conduit built pursuant to St. 1897, c. 426, § 5, which gave a remedy by petition for "all damages sustained by the owner of any land . . . taken . . . or injured in any manner, or by any person, in doing any act or thing under" that chapter. At pp. 542–543, it was said, "The defendant also contends that even if the plaintiff's damages were not the necessary result of the work ordered by the commissioners but were occasioned by tortious negligence in carrying out such orders, this action will not lie. In support of this contention the defendant calls attention to the peculiar wording of § 5 of the statute, giving a remedy by petition not merely for damages for any land, watercourse, right or easement taken by the commissioners, but also when any land, watercourse, right, or easement is 'injured in any manner, or by any person, in doing any act or thing' under § 4 of the statute. The defendant's argument is . . . that it is to be supposed that the Legislature, having in mind the inconvenience and injustice resulting from a doubtful or double remedy, has in this enactment provided for a single proceeding to cover injuries of every conceivable description. We do not so construe the statute. The right of every landowner to recover by the usual processes of law for tortious damages to his land is important, and one which we cannot hold the Legislature to have taken away in any instance unless its language has no other reasonable meaning. In the absence of an explicit provision that the remedy by petition is to be exclusive, and is to extend to damages due to tortious and negligent acts done in carrying out the purposes of the statute, we hold that notwithstanding the very general lan-

guage of § 5 the remedy for such acts is by action of tort and not by petition."

Other cases supporting the position we take are *Mellen* v. *Western R.R.* 4 Gray, 301, 302–303, *Perry* v. *Worcester*, 6 Gray, 544, 547, *Wheeler* v. *Worcester*, 10 Allen, 591, 604, *Brewer* v. *Boston, Clinton & Fitchburg R.R.* 113 Mass. 52, 58, *Manning* v. *Lowell*, 130 Mass. 21, 22, *Morse* v. *Worcester*, 139 Mass. 389, 391, 392–393, *Aldworth* v. *Lynn*, 153 Mass. 53, 56–57, *Peabody* v. *Boston & Providence R.R.* 181 Mass. 76, 82, *McKeon* v. *New England R.R.* 199 Mass. 292, 295–296, *Hittinger Fruit Co.* v. *Cambridge*, 218 Mass. 220, 223, 224, and *Belkus* v. *Brockton*, 282 Mass. 285, 287, 290.

In the light of the history of our decisions we must hold that recovery cannot be had under § 15 for damages due to negligence or to other unauthorized acts or omissions in carrying out work under St. 1952, c. 354. If the Legislature intended to authorize recovery for tort, we would expect to find language sufficiently explicit to show a purpose to depart from long standing precedent. We would also expect to find a clearly stated limit of any permitted recovery for torts in eminent domain proceedings, as well as a provision as to whether such permitted recovery was in addition to or in place of an action of tort. If, because of the magnitude of many modern public works projects, there should be recovery in eminent domain proceedings for tortious injuries to property not taken, the wisdom and scope of such a change, involving as it does financial and other practical considerations, present broad legislative problems and not questions for judicial determination in individual cases.

The jury were correctly told in the charge: "In order to recover on this petition, it is necessary that the petitioner prove by a fair weight of the credible evidence that his property was damaged or destroyed in the carrying out or in the exercise of the powers granted the Turnpike Authority by the 1952 act. The construction of the turnpike and access roads is one of the powers granted in that act . . . [a]nd the clause 'all private property damaged or destroyed

in carrying out the powers' and the words 'any person damaged in his property by the exercise of the powers' imply and definitely mean that there must be a causal connection between the acts of the Turnpike Authority, its agents or servants, are charged with performing and the injury or damage suffered."

The jury were also instructed: "Now, if the damage was caused by an act of God, the . . . [respondent] is not responsible and is not to be held responsible. But even if a flood was itself so extraordinary that it can be classed as an act of God, it is still possible for the respondent to damage the . . . [petitioner] if the respondent, by its agents or servants, did some act in the carrying out or in the exercise of its powers in constructing the turnpike or the access road that was a proximate cause or was an active, efficient and potent cause of the damage done to the petitioner's property. And if such an act was such a cause of damage, the respondent could be held responsible." This part of the charge was erroneous in permitting the jury to find liability for a negligent act. They should have been told that damages due to negligent acts were recoverable in tort but not in the present form of action.

A further point should be mentioned. We learn in the charge, but nowhere else in the record, that there was testimony by the petitioner that persons engaged in the construction of the access road on some date or dates not given trespassed on his land, removed earth from the bottom of the fish pool, and incorporated it with the fill in the access road. The judge instructed the jury that such a trespass would not be an injury "caused by the taking or by the public improvement" under § 12. Later in the charge the judge returned to the subject and left this category of damage, along with that sustained during the two rainfall periods, to the jury to determine whether it was damage proximately resulting from the doing of "some act in the carrying out or in the exercise of its powers in constructing the turnpike or the access road." The distinction between authorized acts and acts which give rise only to an action of

tort applies equally to the removal of earth from the bottom of the fish pond. See *Daley* v. *Watertown*, 192 Mass. 116, 118. The record does not permit a more definite statement in this regard.

The questions reported are all answered in the affirmative, and in accordance with the terms of the report the verdict is set aside and there must be a new trial.

*So ordered.*