MASSACHUSETTS TURNPIKE AUTHORITY *vs.* PERINI
CORPORATION & others.[1]

Suffolk.     May 5, 1965. — June 28, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Contract,* Building contract, Contract of indemnity. *Insurance,* Contractor's liability insurance. *Public Works. Words,* "Accident," "Occurrence."

Review of decisions largely controlling the interpretation of a property damage indemnity clause inserted for the benefit of a turnpike authority in a construction contract and of the property damage coverage of a liability insurance policy issued to the contractor.  [452–454]

Under a contract drawn and awarded by a turnpike authority for construction of a tunnel after the authority had taken by eminent domain "all property and rights" necessary for the project, providing that the contractor "shall indemnify and save harmless the [a]uthority . . . against all . . . claims . . . for or on account of any . . . damage to property arising out of or in consequence of the acts of . . . [the contractor] in the performance of the work covered by the contract," and that the contractor "shall, at his own expense . . . protect from injury all property . . . adjacent to the work and . . . be responsible for and repair at his own expense any and all damage and injury thereto, arising out of . . . any act or omission of . . . [his] . . . in the performance of the work," the parties intended that the contractor should indemnify the authority against claims for property damage arising from his tortious acts and omissions, but not against claims enforceable against the authority under G. L. c. 79 for property damage attributable to the takings by eminent domain or "inevitable" in carrying out the work.  [454–455]

The coverage of a certain property damage liability insurance policy issued to the general contractor on a tunnel construction project of a turnpike authority and naming the contractor as the insured and the authority as an additional insured did not extend to, or require the insurer to defend, claims enforceable against the authority under G. L. c. 79 for property damage attributable to eminent domain takings by the authority for the purposes of the project or "inevitable" in carrying out the construction work.  [455–457]

Under a liability insurance policy requiring the insurer to "defend any suit . . . against the insured alleging . . . injury . . . [covered by the

---

[1] The additional defendants are The Employers' Liability Assurance Corporation, Limited and The First National Bank of Boston (the trustee), the trustee under an indenture securing bonds issued by the authority. No relief is sought against the trustee.

policy] and seeking damages which are payable . . . [thereunder], even if such suit is groundless," the obligation of the insurer to defend any particular suit against the insured depends on whether the pleadings in that suit set forth a claim within the coverage of the policy. [457]

BILL IN EQUITY filed in the Superior Court on February 4, 1963.

The suit was reported by *Sullivan,* J.

*Walter Powers* (*Daniel Needham & Walter White* with him) for the plaintiff.

*Philander S. Ratzkoff* (*Roger B. Coulter* with him) for the defendants.

CUTTER, J. The authority's bill in equity seeks declaratory relief against Perini Corporation (Perini) and also against an insurance company (the insurer, see fn. 1) which had issued to Perini a comprehensive liability insurance policy. The policy named Perini as insured and the authority and the trustee (fn. 1) as additional insureds. A judge of the Superior Court, without making any decision, reserved the case for the determination of this court upon the pleadings and a case stated.

In 1959, the authority (acting under St. 1958, c. 598) made a contract with Perini (drafted by the authority) to construct an additional traffic tunnel (now known as the Lieutenant Callahan Tunnel) under Boston harbor, to modernize the existing Sumner Tunnel, and to combine the two tunnels as a single project. The contract (art. 26) provided that Perini "shall indemnify and save harmless the [a]uthority and . . . its officers, . . . and employees against all suits, claims or liability of every name and nature, for or on account of any injuries to persons or damage to property arising out of or in *consequence of* the acts of . . . [Perini] in the performance of the work covered by the contract and/or [*sic*] failure to comply with . . . [its] terms . . . whether by himself or his employees or sub-contractors, but only in respect of such injuries or damages sustained . . . prior to the completion and acceptance of the work . . . [emphasis supplied in the original

exhibit]." Certain other relevant contract provisions are summarized in the margin.[2]

The insurer issued the comprehensive liability insurance policy mentioned above. As amended, the relevant coverage (insuring agreement 1, coverage D, property damage liability) read, "To pay on behalf of the [i]nsured all sums which the [i]nsured shall become legally obligated to pay as damages for: (a) [p]hysical injury to or destruction of tangible property, or (b) [l]oss of use of such tangible property, provided the physical injury thereto was caused by accident."[3] The policy also required the insurer to "defend any suit . . . against the insured alleging such . . . injury or destruction and seeking damages which are payable under . . . this policy, even if such suit is groundless . . . ."

The authority "acquired by formal eminent domain takings all property and rights deemed by it essential for the construction," thus making available to Perini "those areas and rights deemed essential for the prosecution of the work

---

[2] Article 19, entitled "Insurance Requirements," provided, among other things, that Perini would carry (A) workmen's compensation insurance and (B) two forms of "public liability insurance," viz. (art. 19, B 1) — contractors' public liability and property damage liability insurance, and (art. 19, B 2) contractors protective public liability and property damage liability insurance. In respect of property damage insurance, art. 19, B 1, described the coverage as "regular [c]ontractors' [p]roperty [d]amage [l]iability [i]nsurance . . . for all damages arising out of injury to or destruction of property in any one accident [see fn. 3]," and then referred to the limit per accident and to an aggregate limit during the policy period. Article 25 (protection and restoration of property) provided, in part, that Perini "shall, at his own expense, preserve and protect from injury all property either public or private adjacent to the work and . . . be responsible for and repair at his own expense any and all damage and injury thereto, arising out of . . . any act or omission of . . . [Perini] or his employees or sub-contractors in the performance of the work." Article 30 provides that, until final approval by the authority, Perini "shall assume full charge and care of the work and . . . shall take every necessary precaution against injury or damage to his work . . . from any cause whatsoever, and especially when blasting is to be done."

[3] Prior to amendment by endorsement, coverage D read, "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." The same endorsement which amended coverage D also struck out (except with respect to the insurance for loss of use of tangible property provided in subpar. [b] of the endorsement) the word "accident," wherever it appeared in the policy with reference to coverage D, and substituted the word "occurrence."

under the contract. In respect of each case or claim which is the subject matter of controversy . . . such areas and rights had been so made available to . . . [Perini] prior to the occurrence of any alleged damage to the affected property in each such case or claim. The work . . . at the time of the bringing of this bill . . . had not been completed, nor accepted by the Authority.''

During the performance of the contract, ''property of landowners was physically injured or destroyed, and in some cases rights of access were impaired. As a result of the takings made and of the alleged injury to or destruction of such property or of impairment of access to such property . . . forty-four owners initiated petitions against the [a]uthority'' under G. L. c. 79. See St. 1958, c. 598, § 15. The authority in each instance has called on Perini and the insurer to defend the proceeding and to save the authority harmless against the claim. Because Perini and the insurer have declined to defend these cases, the authority has paid (1) the legal expenses in connection with (a) the claims which have been tried and (b) the preparation of other cases, and (2) all judgments against it.

The authority contends (1) that Perini and the insurer ''are bound . . . jointly and severally, to indemnify it for all judgments . . . for damages, other than for takings by eminent domain, caused to property in the course of the construction,'' and (2) that the insurer ''is bound to defend against all petitions heretofore brought against the [a]uthority for [such] damages.'' Perini and the insurer contend (1) that the contractor has no obligation under the contract with the authority either to defend petitions brought against the authority under G. L. c. 79,[4] or to in-

---

[4] General Laws c. 79, § 14, permits the filing of a petition in the Superior Court for the assessment of damages under c. 79. Section 6 (prior to its amendment by St. 1964, c. 579, § 2) provided that damages for a taking by eminent domain ''shall be paid by the body politic . . . on behalf of which the taking was made.'' Section 9 deals with ''injury . . . caused to . . . real estate . . . by . . . a public improvement which does not involve the taking of private property,'' where the owner is entitled to compensation for such injury. Section 10 deals with instances where ''real estate . . . has been taken . . . or . . . damaged by . . . a public improvement . . . but such taking . . . or damage was not effected by . . . a formal vote . . . of the

demnify the authority against any judgments recovered upon such petitions, and (2) that the insurer has no such obligation under its policy naming the authority as an additional insured.

1. Contract and insurance policy provisions much like those here discussed have been the subject of earlier decisions. Like other contracts of indemnity, such provisions are "to be . . . reasonably construed" in accordance with the parties' intention, with reference to the parties' situation when the provisions were negotiated, and in a manner "to effectuate the purpose sought to be accomplished." See *New York, N. H. & H. R.R.* v. *Walworth Co.* 340 Mass. 1, 3.

*Bryne* v. *Gloucester*, 297 Mass. 156, dealt with a situation in many respects similar to that now before us. A contractor agreed with a city to construct a tunnel under certain buildings and (p. 157) to indemnify it against claims "by reason of any act, omission or neglect of the . . . [c]ontractor . . . in carrying on the work." The contractor performed the work with extreme care and with no negligence. Any damage to the buildings was caused by necessary blasting operations and was inevitable. The city, when it acquired an easement under the buildings, had agreed to restore the buildings in the event of inevitable damage. The trial judge ruled (p. 158) that the word "act" in the contract meant only improper or negligent acts, and that the contractor's obligation to indemnify did not extend to loss which was inevitable by reason of the construction. This court took essentially the same view. It construed the contract "with reference to the situation of the parties when they made it and to the objects sought

---

board of . . . a body politic." Statute 1958, c. 598, § 7, gave the authority power to take (under G. L. c. 79) land or easements for the tunnel project, and provided (1) that "[a]ny person whose property has been taken . . . may recover from the [a]uthority under" c. 79, and (2) that the damages shall be paid by the authority. Section 15 of the 1958 act provided, among other things (a), "All private property damaged . . . *in carrying out the powers* granted by this act shall be restored or repaired . . . or adequate compensation made therefor out of funds provided under . . . this act," and (b) "Any person damaged in his property *by the exercise of any of the powers* granted by this act may recover his damages from the [a]uthority under" G. L. c. 79 (emphasis supplied).

to be accomplished.'' It noted (p. 159) that the parties to the construction contract ''must have expected that the city would acquire the necessary rights'' in private land, and pointed out that, if the city had acquired the easement by eminent domain, it would have acquired ''the right to do all things necessary to complete the work, including the right to inflict 'inevitable' damage,'' with the consequence that the landowners would have acquired, immediately upon the taking ''valid claims against the city for all damages, including such [inevitable] injury to the buildings.'' The court declined (pp. 160–161) to hold that the building owners' claims for inevitable damages arose by reason of any act, omission, or neglect of the contractor as those words were used in the indemnity provision. Cf. *Murray Realty, Inc.* v. *Berke Moore Co. Inc.* 342 Mass. 689, 692–693 (where the damage was not found to be necessary or inevitable).

In *Holbrook* v. *Massachusetts Turnpike Authy.* 338 Mass. 218, it was held that an owner, part of whose land had been taken, might recover under St. 1952, c. 354, § 15, and G. L. c. 79, §§ 10 (see fn. 4) and 12, for ''special and peculiar'' injury subsequently caused to the remainder of his land as a necessary consequence (p. 224) of construction work. The court pointed out (p. 222) that the Legislature may permit recovery of damages beyond what ''the landowner . . . [was] entitled to receive as a matter of constitutional right,'' and said (p. 223) that the court then was ''not dealing with a statute [the 1952 statute] which imposes liability only where a taking is involved.'' At p. 224, it was said, ''If, due to the performance of the work as authorized, the [then] petitioner's property suffered injuries . . . such damage could be found to have occurred while 'carrying out the powers' or 'by the exercise of any of the powers' conferred by [St. 1952] c. 354, and to be a necessary consequence of doing the authorized work at that time. In this respect it is immaterial that the work was performed by a contractor.'' The court stated (pp. 224–226) that there could not be recovery under St. 1952, c. 354, § 15 (and G. L. c. 79), ''for damages due to negligence or to other

unauthorized acts or omissions in carrying out work under'' the 1952 statute. The relevant provisions of § 15 of the 1958 statute (fn. 4) appear identical with those of § 15 of the 1952 statute considered in the *Holbrook* case.

These decisions largely control the present case. The contract between Perini and the authority, and the policy issued by the insurer, each must be given a sensible, practical construction in the light of these decisions. See *United Shoe Mach. Corp.* v. *Gale Shoe Mfg. Co.* 314 Mass. 142, 148; *Connecticut Indem. Co.* v. *Lee,* 74 F. Supp. 353, 359 (D. Mass.) affd. 168 F. 2d 420 (1st Cir.).

2. We hold, following the *Bryne* case, that the parties intended by art. 26 (and also the somewhat related provisions of art. 25, fn. 2) of the contract between Perini and the authority to require Perini to indemnify the authority only from claims for Perini's acts and omissions causing damage *other than* damage attributable to a taking or ''inevitable'' in carrying out the work. In essence, this means that Perini will be liable only if its acts or omissions were tortious by reason of negligence or strict liability, maintaining a nuisance, participating in wrongful conduct, taking unauthorized action,[5] or otherwise. The *Holbrook* case, 338 Mass. 218, 224, as has been said, decides that damages for tortious action may not be recovered in a proceeding under G. L. c. 79. Because damage for which there may be recovery under c. 79 is either attributable to a taking or inevitable in carrying out the work, Perini would have no obligation to hold the authority harmless against claims thus enforceable under c. 79.

Although art. 26 is broadly expressed, the circumstances make plain the intention of the parties. If any reasonable doubt existed concerning the parties' intention, the contract should be construed against the authority which drafted it. See *Bowser* v. *Chalifour,* 334 Mass. 348, 352.

---

[5] See *Boston Edison Co.* v. *Campanella & Cardi Constr. Co.* 272 F. 2d 430, 432–433 (1st Cir.). We have no occasion, however, to consider whether and to what extent the principle applied in the *Boston Edison Co.* case would permit recovery in tort where the contractor without negligence followed contract specifications themselves negligently drawn by a State agency.

We construe Perini's liability to indemnify the authority as excluding not only all damages for direct takings by eminent domain, but also, so far as such damages may be obtained under G. L. c. 79, (a) all damages, attributable or related to a taking, for injury to the remainder of a parcel of land, a part of which has been taken;. (b) all "special and peculiar" damages (by reason of deprivation of access or otherwise) "to a parcel of land injured when no part of it has been taken" (see G. L. c. 79, § 12, as amended through St. 1959, c. 626, § 4; see also *Webster Thomas Co.* v. *Commonwealth,* 336 Mass. 130, 138–139); and (c) damages from injuries which are "inevitable" in carrying out a public project. All such injuries arise, not from any act of Perini (see the *Bryne* case, 297 Mass. 156, 160–161), but from the sovereign act of appropriation of property by eminent domain. Compensation is paid for them (either as a matter of constitutional necessity or by legislative command) because of the exercise of that right. If the parties had intended substantially to extend beyond usual forms of tort liability the natural scope of Perini's obligation to indemnify the authority, the parties would have been unlikely to leave that extension to implication. See *Chas. T. Main, Inc.* v. *Massachusetts Turnpike Authy.* 347 Mass. 154, 162. See also *Pennsylvania Turnpike Commn.* v. *United States Fid. & Guar. Co.* 343 Pa. 543, 546–548.

3. We treat the policy as furnished in compliance with the contract requirements of art. 19, B 1 (see fn. 2). There would be little occasion for Perini (the principal insured under this policy) to insure itself, except with respect to its own tort liability. As to no other matters is it (Perini) obliged to indemnify the authority. The insurer does not argue that it is not obliged to defend and indemnify Perini and the other insureds with respect to tort claims against each of them (and appears to be doing so with respect to pending tort actions). It is difficult to see any remaining purpose in the requirement of art. 19 that Perini furnish property damage liability insurance except to support Perini's indemnity obligation under art. 26, which, we have

held, does not extend to claims under G. L. c. 79. Such policies most frequently protect against tort claims, and it would take clear language to warrant interpreting such a policy as covering, or as procured to cover, the direct and indirect effects of a sovereign act of appropriation.

Of an automobile bodily injury policy covering "injury accidentally sustained," it was said in *Miller* v. *United States Fid. & Guar. Co.* 291 Mass. 445, 448, "It is common knowledge that protection against liability on the ground of negligence is the principal purpose of such policies." This is also true of the type of contractor's property damage insurance here involved, although, of course, such policies and the term "accident" (and also the term "occurrence" here substituted by endorsement, see fn. 3) will not be given "any narrow construction . . . which will limit or defeat any coverage *fairly intended* to be given by" such a policy (emphasis supplied). See *Vappi* v. *Aetna Cas. & Sur. Co.* 348 Mass. 427, 432. See also Appleman, Insurance Law and Practice, § 4497.; Couch, Insurance 2d, §§ 1.32, 44:269, 44:337–44:345.

We do not see in the substitution of the word "occurrence" for "accident" in various parts of the policy (fn. 3), or in any other provision of the policy, evidence of an intention to require the insurer to indemnify either Perini or the additional insureds, or to defend them, against claims for injuries for which recovery may be had under G. L. c. 79. One purpose of the substitution of the word "occurrence" for "accident" may have been to include in the coverage a suitable provision for indemnity against injuries (see e.g. *American Cas. Co.* v. *Minnesota Farm Bur. Serv.* 270 F. 2d 686, 690–692 [8th Cir.]) gradually occurring (as contrasted with an injury arising from a sudden event, an aspect of injuries frequently, but not always, associated with the word "accident"). See Bean, The Accident Versus the Occurrence Concept, 1959 Ins. L. J. 550, 553; Leslie, Automobile and General Liability Insurance, Am. Bar Assn. Section of Insurance, Negligence, and Compensation Law, 1962 Proceedings, 70, 84–85. See also

*United Pac. Ins. Co.* v. *Schaecher,* 167 F. Supp. 506, 508–509 (N. D. Cal.). The use of the term "occurrence" also may be designed to expand the coverage so that it will be more nearly as extensive as negligence and possibly also other forms of tort liability.[6] We hold that the policy does not cover and was not intended to cover, any liability enforceable under G. L. c. 79. For discussion of an issue somewhat similar to that before us, see *Lumbermens Mut. Cas. Co.* v. *C. Y. Thomason Co.* 87 F. Supp. 889, 892–893 (W.D. S.C.), affd. 183 F. 2d 729, 732–733 (4th Cir.). See also *Tieton* v. *General Ins. Co.* 61 Wash. 2d 716, 721–724. There is no such ambiguity about the policy, read in the light of the attendant circumstances, as to require its construction most strongly against the insurer. Cf. the *Vappi* case, 348 Mass. 427, 431.

The naming of additional insureds does not extend the nature of the substantive coverage originally given by the policy but merely gives to other persons the same protection afforded to the principal insured. See *Sonoco Products Co.* v. *Travelers Indem. Co.* 315 F. 2d 126, 128 (10th Cir.); *Refined Syrups and Sugars, Inc.* v. *Travelers Ins. Co.* 136 F. Supp. 907, 910–911 (S.D. N.Y.), affd. per cur. 229 F. 2d 439 (2d Cir.).

The insurer's liability to defend Perini and the additional insureds under its policy relates to "any suit . . . against the insured alleging such . . . injury or destruction and seeking damages . . . payable under the terms of this policy." The allegations in the pleadings, of course, determine whether in respect of any particular claim such a liability exists. See *Magoun* v. *Liberty Mut. Ins. Co.* 346 Mass. 677, 681. Unless the pleadings show that a claim, if proved, will be within the policy's substantive coverage, the insurer has no obligation to defend.

4. A final decree is to be entered declaring that neither Perini nor the insurer has any obligation to defend petitions

---

[6] The necessity for this type of coverage expansion is probably greater in jurisdictions which have not taken as broad a view of the word "accident" as is reflected in our decisions. See cases collected in the *Vappi* decision, 348 Mass. 427, 432. See also Appleman, Insurance Law and Practice, § 391, 4492, 4733; Couch, Insurance 2d, §§ 1.32, 44: 269, 44: 283, 44: 284, 44: 337.

brought against the authority to recover damages under G. L. c. 79, as amended, the recovery of which is authorized by St. 1958, c. 598, or to indemnify the authority against any judgments therein. The Superior Court, if the parties cannot agree, shall include in the final decree a determination, in accordance with the principles stated in this opinion, whether each claim to which the case stated refers comes within the coverage of the policy. Perini and the insurer are to have costs of this proceeding.

*So ordered.*