**Arnold AGULNICK et al, Plaintiffs,**

**v.**

**AMERICAN HOSPITAL SUPPLY CORPORATION, Defendant, Cross-Claimant, and Defendant in Counterclaim,**

**v.**

**ROY LAPIDUS, INC. et al, Defendants, Cross-Defendants, and Plaintiffs in Counterclaim.**

**Civ. A. No. 77–981–C.**

**United States District Court, D. Massachusetts.**

**Feb. 11, 1981.**

---

William F. Weld, Hill & Barlow, Boston, Mass., for American Hospital Supply Corp.

James M. Pool, Boston, Mass., for Roy Lapidus, Inc. and Roy Lapidus.

## MEMORANDUM

CAFFREY, Chief Judge.

American Hospital Supply Corporation ("American") has cross-claimed against L. Roy Lapidus ("Lapidus") and Roy Lapidus Inc. (RLI) for attorneys' fees and other expenses that it incurred during the course of this litigation. After a nonjury trial and review of the evidence received regarding the cross-claim this Court finds on the merits for American.

The following is the background which led to the hearing: American purchased the assets of RLI in 1976 and at the same time signed a patent licensing agreement with Lapidus, individually. The purchase agreement included an indemnity provision that the seller (RLI) and Lapidus would indemnify the Buyer (American) for all losses, costs and expenses, including court costs and attorneys' fees, that arose out of, resulted from or were attributable to a breach by the seller of any covenant, representation or warranty that the seller had made. In 1977 a civil action was filed in which plaintiffs Agulnick and Harris brought a patent infringement claim against American, RLI, and Lapidus. American defended the action and filed a counterclaim on behalf of all three defendants against Agulnick and Harris. American also filed the cross-claim that is before the Court today, on the premise that the suit by Agulnick alleged and, if proved, established, a breach of the purchase and licensing agreements by Lapidus and RLI, thus triggering the indemnity clause and entitling American to fees and costs.

On October 3, 1979 the patent infringement claim was dismissed with prejudice by stipulation of the parties. At the same time the counterclaim of Lapidus and RLI was dismissed with prejudice. The counterclaim of American against Agulnick survived until March 26, 1980, at which time it, too, was dismissed with prejudice by stipulation. On July 31, 1980 this Court dismissed a counter-cross-claim that RLI and Lapidus had filed against American alleging antitrust violations. The final residual claim in all of this litigation is the present cross-claim by American seeking fees and expenses from RLI and Lapidus on which this Court took evidence late last year.

American relies primarily on § 9.6 of the Purchase Agreement. That provision reads:

> [T]he Seller (and Lapidus) and the Buyer hereby mutually agree to indemnify and hold harmless the other party or parties to this Agreement from and against any and all losses, costs, expenses, damages or liabilities (including, among other things, court costs and attorneys' fees) incurred or suffered from time to time by the indemnitee(s), arising out of, resulting from or attributable to any breach of any covenant or any representation or warranty by the indemnitor(s) contained in or given pursuant to this Agreement ...

The most obvious breach of warranty on which American relies is the Lapidus breach of § 7.02 of the license agreement. Section 7.02 states: "Licensor [Lapidus] hereby warrants that he is unaware of any patents which might be infringed by the use of the Patent and is unaware of any infringement of the Patent." The initiation of a patent infringement suit by Agulnick on the strength of the Armstrong patent came as no surprise to Lapidus and RLI and is directly contrary to this warranty. Even the cross-claim defendants admit that American's defense of the patent infringement claim by Agulnick came within the indemnity language of § 9.6 of the purchase agreement. (Defendant's Trial Brief p. 2).

■ The issue before the Court is whether the indemnity language may be read broadly enough to cover American's fees and expenses in pursuing claims that were subsidiary to the main patent infringement claim: namely, American's counter-claim against Agulnick; American's defense against the antitrust counter-cross-claim by RLI and Lapidus; and this cross-claim for fees and out-of-pocket disbursements. The second issue is whether the fees and expenses, if recoverable, are reasonable.

■ I rule that the indemnity provision of the purchase agreement (§ 9.6) should be reasonably construed to cover American's fees and expenses for the three subsidiary claims specified above, in addition to reimbursement for defense of the patent infringement claim. It is a general interpretative rule in federal court that indemnity provisions will be broadly construed once the right to indemnification has been established. *Brown v. Seaboard Coast Line Railroad Co.*, 554 F.2d 1299 (5th Cir. 1977). Massachusetts courts emphasize the need to "reasonably construe" indemnity provisions in light of the parties' intentions and circumstances at the time of negotiation. *Massachusetts Turnpike Authority v. Perini Corp.*, 349 Mass. 448, 208 N.E.2d 807 (1965). In *Financial Acceptance Corp. v. Garvey*, —— Mass.App. ——, 399 N.E.2d 506 (1980) an indemnity provision covering legal expenses received a facial and uncontroversial interpretation. The allowance of reasonable attorneys' fees was an "award ... made pursuant to a valid contractual provision." *Id.*

The record reveals and I find that RLI and Lapidus breached the warranty § 7.02 in the license agreement. I find, in addition, that RLI and Lapidus breached § 5.1(r) of the purchase agreement, a full disclosure warranty made at the time of sale. The defendants failed to reveal their consideration of an antitrust suit against American and failed to disclose their full concern over the Armstrong patent and Agulnick's threat of litigation. This court observes, but need not decide, that Lapidus and RLI may well have breached still other warranties and representations in the purchase agreement as well, particularly § 5.1(j), (k), (m) and (o).

Given that the defendants themselves concede that at least part of the fees and expenses are within the indemnity provision, that the right to indemnity is clear, that the breadth of § 9.6 language is self-evident, and that indemnity provisions should be read broadly, this Court concludes and rules that the fees and expenses incurred in pursuing American's subsidiary claims fall within the indemnity provision.

First, as to the fees and expenses of this cross-claim itself, it seems incongruous and almost a nonsequitur for defendants to concede that American has the right to recover the costs of its defense of the patent infringement claim but then argue that it cannot recover the costs of a claim to effectuate that right. The former has little significance without the latter. I find that RLI and Lapidus breached the terms of § 9.6 by failing to indemnify American and forcing the filing of this cross-claim. RLI and Lapidus therefore, not only breached initial warranties and representations, but they breached the indemnity agreement itself. Consistent with the understanding of that agreement, American should be indemnified for the cost of this cross-claim, which arose out of and was attributable to both the breach of the warranties and the indemnity agreement.

Second, as to the fees and expenses of defending against the Lapidus and RLI antitrust counterclaim, these too arose out of, resulted from, or were attributable to breaches of warranty and representation by RLI and Lapidus. The antitrust charge may well have been addressed and resolved prior to the 1976 purchase if RLI had not breached its full disclosure warranty by failing to reveal its consideration of the suit. The record also suggests that receiving a contingency interest in this counterclaim was one of the incentives that led to Agulnick's dismissal of the main patent infringement claim, which further ties together the expenses of defending the respective claims.

Third, as to the fees and disbursements incurred while pursuing American's counterclaim against Agulnick, a claim which survived six months longer than the identical claim of RLI and Lapidus, it cannot be said that these costs did not "arise out of" or were not "incidental to" the main action, the patent infringement claim. In *Leventhal v. Krinsky*, 325 Mass. 336, 90 N.E.2d 545 (1950) the Supreme Judicial Court of Massachusetts observed that the achievement of one legal objective, the collection of an amount due on a note in that particular case, may nevertheless require various legal proceedings and an award of legal expenses should not exalt form over substance. The award in that case was for all legal expenses that "arose out of and were incidental to" the main action. The principle was reaffirmed recently in *Bartlett v. Smith*, —— Mass.App. ——, 406 N.E.2d 414, 1257 (1980). That case in no way casts doubt on the result here, contrary to defendant's suggestion. The defendant was denied costs and legal fees in *Bartlett* apparently because it was his own improper refusal to accept the tender of mortgage indebtedness which triggered the litigation, and the court was not inclined to award fees for the claimants own wrongful course of conduct.

It would be troublesome to rule that American could recover for its strict defense of a patent infringement claim, but could not recover for its prosecution of the counterclaim, which was part of the overall defense and which raised questions about Agulnick's acquisition of the patent involved in the infringement claim. Such a counterclaim certainly "arose out of" and was "incidental to" the main action.

The survival of the counterclaim for six months after dismissal of the infringement claim raises no serious problems. The record does not support a finding that American punished Agulnick, and the fees for the period following the October dismissal for work on this counterclaim were relatively minor. Moreover, American may well have had good reason for maintaining some leverage on Agulnick, realizing that it still had two claims to contest with RLI and Lapidus, and sensing that RLI and Lapidus had reached some sort of understanding with Agulnick prior to the October 3, 1979

dismissal of Agulnick's claim. More importantly, this Court will not place itself in the posture of adjudicating the merits of all trial tactics. It would be a strange legal system indeed if courts sanctioned defenses without counterclaims and divided and parceled legal fees and costs according to its view of tactical perfection.

The remaining issue is whether the aggregate of $64,032.09 is a reasonable figure for attorneys' fees and disbursements, covering all the litigation and the services of three firms. After reviewing the various factors mentioned some time ago in *Angoff v. Goldfine*, 270 F.2d 185 (1st Cir. 1959), as well as those recited in *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), and examining the many bills admitted as exhibits, I find that the fees and expenses claimed were reasonable. The ultimate value of the 1976 purchase agreement was around 4 million dollars. This litigation demanded some expertise to terminate a patent infringement claim and dismiss a potentially serious antitrust claim. American had a good bit at stake, and while Lapidus and RLI must now carry the burden of this action, they share in the favorable result of this litigation for defendants as against the plaintiffs. Had plaintiffs Agulnick and Harris been more successful, the value of the 1976 sale and license would have been seriously eroded.

RLI and Lapidus make much of the fees and expenses charged after the October 1979 dismissal of some claims. In fact, however, they amount to only $4,243.89 for the Chicago firm, and $13,723.62 and $1,186.10 for the two Boston firms that aided American. Over half of the Chicago firm's charges, for March, April and May of 1980, are necessary costs incurred in passing the remaining litigation, the antitrust claim and cross-claim, to local counsel. The major burden of defending the patent infringement claim ended when the Chicago firm completed the October 3, 1979 dismissal, and their bills reflect that changing emphasis. The $13,723.62 charge was largely for defending the antitrust counterclaim and pursuing various motions, with the preparation of this cross-claim also in mind. I find the breakdown of that figure for March, April and May of 1980 in the various bills adequate and reasonable.

Order accordingly.