Janet R. JOHNSON, Trustee,
Judgment Creditor,

v.

MILGO INDUSTRIAL, INC., a corporation, and Milgo Art(s) Systems, Inc., Judgment Debtors, and United States Fire Insurance Company, Garnishee.

No. 4–72–Civ. 125.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 24, 1978.

Charles T. Hvass, Hvass, Weisman & King, Minneapolis, Minn., for judgment creditor.

Barry D. Lesser, Brooklyn, N. Y., for judgment debtors.

Michael J. Sauntry, Collins & Buckley, St. Paul, Minn., for garnishee.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

LARSON, Senior District Judge.

On November 18, 1971, Richard Johnson was fatally injured while working on the assembly of a steel sculpture. Janet R. Johnson (Creditor), wife of the decedent, commenced a diversity action in this Court for the wrongful death of her husband and secured a judgment against Milgo Industrial, Inc. (Industrial) and Milgo Art(s) Systems, Inc. (Arts). In a special verdict the jury found Industrial, the company that fabricated the sculpture, 55% responsible for the $505,000 award. The jury held Arts, which negotiated the sale of the sculpture, 30% responsible. The decedent's employer was 15% responsible. Dismissals of

Industrial's and Arts' claims for contribution against the decedent's employer were affirmed on appeal, but the joint and several liability of Industrial and Arts was reduced from $505,000 to $390,000. Royal Indemnity Company, an insurer for Arts, paid $250,000 plus interest on the judgment, leaving outstanding a balance of $140,000 plus interest. In an effort to secure the remainder of the award, Creditor instituted garnishment proceedings against United States Fire Insurance Company (USFIC) pursuant to Federal Rule of Civil Procedure 69 and Minnesota Statute § 571.51. USFIC had issued a comprehensive catastrophe liability policy to Industrial in force during the period in which the accident occurred. Creditor claims that USFIC is liable for the unsatisfied judgment under this policy. USFIC contends that it owes nothing to Creditor. The parties have engaged in various forms of discovery, presented evidence at a trial before the Court, and submitted extensive memoranda on the factual and legal issues involved.[1] The Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Garnishee USFIC is a corporation organized under the laws of the State of New York with its principal place of business in New York, New York.

2. Effective December 26, 1968, and continuing through December 26, 1971, USFIC agreed to insure Industrial against certain types of losses more fully discussed below. This agreement was set forth in a contract entitled "The Defender Commercial Comprehensive Catastrophe Liability Policy." The policy provided coverage only for losses in excess of certain retained limits which were to be determined in part by reference to the limits of coverage from other policies that Industrial agreed to procure. Pertinent provisions of the policy are set forth below.

3. Industrial agreed to obtain and maintain a comprehensive liability policy of primary insurance with Aetna Casualty and Surety Company providing coverage for bodily injury liability in the amount of $250,000 per person.

4. Industrial did not obtain the agreed upon policy with Aetna and had no other comparable coverage.

5. Industrial is a corporation organized under the laws of the State of New York with its principal place of business in Brooklyn, New York. Industrial was organized in 1960 for the purpose of engaging in miscellaneous metalwork and metal fabrication.

6. During the years 1968 through 1971 the shares of Industrial were privately held by the Gitlin family in the following proportions: M. E. Gitlin—11 shares; Rose Gitlin—9 shares in 1968, 3 shares thereafter; Bruce Gitlin—3 shares after 1968; Alan Gitlin—3 shares after 1968. During this period M. E. Gitlin was president and Rose Gitlin was secretary of Industrial. Bruce Gitlin was vice president during 1970 and 1971. M. E. Gitlin, Bruce Gitlin and Alan Gitlin sat on the three person Board of Directors.

7. Arts is a corporation organized under the laws of the State of New York with its principal place of business in Brooklyn, New York. Arts was organized in 1970 for the primary purposes of engaging in speculative investment in art works and of brokering the fabrication and sales of art sculptures by Industrial. After a contemplated public offering failed to materialize, the investment plans were abandoned.

8. During the years 1970 and 1971 the shares of Arts were privately held by the Gitlin family in the following proportions: M. E. Gitlin—26 shares; Bruce Gitlin—12 shares; Alan Gitlin—12 shares. These three individuals constituted the Arts Board of Directors. Bruce Gitlin was president, Alan Gitlin was secretary, and M. E. Gitlin was vice president.

---

1. USFIC raised certain procedural defenses to this action by way of answer but presented no evidence or argument concerning them at trial so the Court assumes that USFIC has abandoned those positions.

9. Though the companies largely performed complementary functions and though Arts had neither place of business nor telephone separate from the facilities of Industrial, the companies were in fact independent corporations. Arts and Industrial kept separate records for accounting and tax purposes, filed separate tax returns based on different fiscal years, maintained separate payrolls and employee benefits, and procured separate insurance coverage. Arts subcontracted a small, but significant, percentage of its business to companies other than Industrial. Industrial performed work for customers other than Arts.

10. Important managerial decisions for both Industrial and Arts were made by members of the Gitlin family and many of the decisions were made for the companies as a unit without any effort to discriminate between them. Other decisions paid technical homage to the separate interests of the two corporations but were in fact manipulations of corporate formalities for the benefit of the shareholders. In particular, the Gitlins often adjusted the billing obligations and practices of the two companies for personal tax reasons. The Gitlins also manipulated the records of the two companies in order to disguise preferential treatment of a union employee.

## CONCLUSIONS OF LAW

1. USFIC's agreement to insure Industrial for ultimate net loss in excess of the applicable retained limit provided coverage under Insuring Agreements I(a) for the personal injury and death of the decedent giving rise to Creditor's claim.

2. USFIC's liability is $2,330 plus interest.

(a) The extent of liability under the policy is defined as "ultimate net loss in excess of the insured's retained limit." Insuring Agreements V.

(b) The insured. Insuring Agreements III states:

The unqualified word "insured," wherever used, includes the named insured . . ..

"Named insured," in turn,

includes any subsidiary company (including subsidiaries thereof) of the named insured and any other company coming under the named insured's control of which it assumes active management.

Arts was not a subsidiary of Industrial; Industrial owned no stock in Arts. Nor was Arts under the control and active management of Industrial within the meaning of this policy. Both Arts and Industrial were under the common control of the Gitlin family, but the policy calls for control and management of Arts by Industrial. Though the Gitlins organized Industrial first and spun off one of Industrial's functions in creating Arts, one may no more say that Industrial controlled Arts than say that Arts controlled Industrial. This is not a merely technical distinction. The class of corporations protected by the quoted language in this and comparable policies could be substantially enlarged were courts to interpret such language to include companies under common control with the named insured. Thus wherever the word "insured" appears in the policy, the reader should substitute the name "Industrial" only and not "Industrial and Arts."

(c) Ultimate net loss. Ultimate net loss is defined as [a]ll sums which the insured, or any company as his insurer, or both, become legally obligated to pay as damages . . . because of personal injury . . . .

Conditions D(b). Industrial's ultimate net loss in this case is $252,330 plus interest. This figure represents the total of Industrial's present outstanding obligation to Creditor of $140,000 and Industrial's potential exposure of $112,330 to Royal Indemnity Company for a claim for contribution towards its excessive payment on behalf of Arts. As a matter of law, Royal Indemnity's payment to Creditor effected a pro tanto discharge of Industrial's obligation to Creditor. The Court concludes that Royal Indemnity's payment also reduced Industri-

al's "ultimate net loss" within the meaning of the USFIC policy. Though the definition provided by the policy might support a conclusion that the ultimate net loss remains $390,000 because Industrial was once legally obligated to pay that sum, the view adopted here is more consistent with the term defined. "Ultimate" connotes the final or at least then existing state of affairs in contradistinction to a temporary, no longer existing status. "Net" similarly implies the figure reached after all available additions and subtractions have been made. Creditor advocates the alternative interpretation but the following hypothetical circumstance reveals that Creditor's definition would create nonsensical results in some situations. Had Industrial actually had an underlying insurer, then when Creditor looked to Industrial and its insurers for payment after having received $250,000 from Royal Indemnity, USFIC's liability, computed according to Creditor's definition, would still have been $140,000 though Industrial's liability would have been only $252,330 with $250,000 of that payable by the underlying insurer.

> (d) Retained limit. The retained limit is defined as the total of the applicable limits of any other underlying policies listed in Schedule A hereof, and the applicable limits of any other underlying insurance collectible by the insured
>
> . . . .

Insuring Agreements V(a). The applicable limit listed in Schedule A is $250,000. There is no other underlying insurance collectible by the insured. Thus the retained limit is $250,000.

(e) The difference between the ultimate net loss, $252,330, and the retained limit, $250,000, is $2,330, the principal amount of USFIC's liability to Creditor.

3. The liability of USFIC attaches with this judgment.

**2.** The retained limit is the total of the Schedule A limit ($250,000) and the "applicable limits of any other underlying insurance collectible by the insured." If the term "insured" were taken to include both Industrial and Arts, then the $250,000 policy of Royal Indemnity, "collectible" by Arts, would have been added to the Schedule A limit to determine the retained limit

■ Creditor's position throughout these supplemental proceedings has been that USFIC is liable for the unsatisfied judgment by reason of its policy protecting Industrial. USFIC has based its denial of liability on the following provision of the policy:

> Liability of the company with respect to any one occurrence shall not attach unless and until the insured, the company in behalf of the insured, or the insured's underlying insurer, has paid the amount of retained limit.

Conditions H. Since neither Industrial, USFIC, nor any underlying insurer of Industrial has paid the retained limit of $250,000, USFIC claims that it has no liability.

Creditor has presented alternative arguments in response to USFIC's position. First, Creditor argued that the $250,000 payment by Royal Indemnity on behalf of Arts satisfies Condition H because Arts qualifies as an insured under Part III of the Insuring Agreements. USFIC objected that Arts was not an insured. The parties came to trial and adduced evidence in support of their respective positions. It was not until after trial that USFIC pointed out that if the Court did conclude that Arts qualified as an insured under the policy, then the retained limit would be $500,000 rather than $250,000 and USFIC could not possibly be liable. The Court has examined the policy and concludes that USFIC correctly interprets Part V(a) of the Insuring Agreements which define the retained limit.[2] Thus, Creditor's argument that Arts is an insured not only fails to help Creditor, it suggests that USFIC has no liability at all. The Court has concluded, however, that Arts did not qualify as an insured under the policy. Therefore, the retained limit is $250,000.

applicable to this accident. Creditor interpreted "insured" in this context to mean Industrial only but for other portions of the policy she sought to have the Court substitute "Industrial and Arts" for the phrase "the insured." The language of the policy must be interpreted with consistency.

Creditor's alternative argument has been to suggest that Condition H should be interpreted less than literally. Creditor relies principally upon a line of cases beginning with *Zeig v. Massachusetts Bonding & Ins. Co.,* 23 F.2d 665 (2d Cir. 1928).[3] In that case an insurer issued an excess burglary insurance policy that provided in part that:

> such policy is issued and accepted: 1. As excess and not contributing insurance, and shall apply and cover only after all other insurance herein referred to shall have been exhausted in the payment of claims to the full amount of the expressed limits of such other insurance.

The insured had three other applicable underlying policies at the time of the burglary that amounted to $15,000. He settled his claims against those policies for $6,000 and instituted an action against the excess insurer. The court's opinion continued:

> The defendant argues that it was necessary for the plaintiff actually to collect the full amount of the policies for $15,000, in order to "exhaust" that insurance. Such a construction of the policy sued on seems unnecessarily stringent. It is doubtless true that the parties could impose such a condition precedent to liability upon the policy, if they chose to do so. But the defendant had no rational interest in whether the insured *collected* the full amount of the primary policies, so long as it was only called upon to pay such portion of the loss as was in excess of the limits of those policies.

*Id.* at 666 (emphasis in original).

Both sides draw on language from that opinion to support their positions. Creditor asks the Court to conclude that USFIC has no rational interest in whether the retained limit has been paid so long as it is obliged to pay only the loss that was in excess of the retained limit. USFIC rejoins that *Zeig* by its terms conceded that express condition precedents would be given effect. The express character of the requirement of payment in Condition H appears to distinguish this case from *Zeig.* There the court was called upon to interpret "exhausted" in an ambiguous context. Here there is no question of ambiguity; the Court is asked to disregard the plain meaning of Condition H.

The Court is not certain whether *Zeig* would support a decision to disregard an express contractual provision. The Court need not reach that question, for it is clear that *Zeig* is no authority for such revision of a contract if the insurer has a rational interest in having its provisions read literally. So long as Creditor intends to argue that USFIC is liable for the full amount of the unsatisfied judgment, USFIC has a compelling interest in having the amount of the retained limit paid. Since the retained limit has not been paid, Creditor possesses an unsatisfied judgment for $140,000. This is the sum for which she claims USFIC is presently liable. Had Industrial or an underlying insurer on its behalf paid the full amount of the retained limit, then, taking into account the fact that Royal Indemnity has at all times been prepared to pay the portion of the judgment attributable to Arts, Creditor could have claimed only $2,330 from USFIC.

There is another illustration that demonstrates the nature of USFIC's interest in having the retained limit paid. Had Creditor first proceeded against Industrial and USFIC, rather than against Arts and Royal Indemnity, she could have then claimed that Industrial's ultimate net loss was $390,000, producing a $140,000 liability for USFIC. Presumably she would have made the same argument that Condition H should be disregarded. USFIC's response would have been that it had a compelling interest in having the retained limit satisfied because only then could it claim that its $140,000 payment to Creditor would exceed In-

---

**3.** *Zeig* does not stand alone, *see Stargatt v. Fidelity & Casualty Company of New York,* 67 F.R.D. 689 (D.Del.1975); *Benroth v. Continental Casualty Company,* 132 F.Supp. 270 (W.D. La.1955); *Handleman v. United States Fidelity & Guaranty Co.,* 223 Mo.App. 758, 18 S.W.2d 532 (1929), but recent cases have refused to follow it. *See USFIC v. Lay,* Findings of Fact and Conclusions of Law, No. 1P 74–448–C (S.D. Ind. Dec. 14, 1977); *Smith v. Government Emp. Ins. Co.,* 558 P.2d 1160 (Okl.1976).

dustrial's fair portion of the judgment and thereby obtain contribution from Arts. By reason of these interests in having the retained limit paid. *Zeig* will not permit the disregard of Condition H.

Creditor does not rely entirely upon *Zeig*. She draws additional support from two sources. First, Creditor invokes Condition P of the policy, which states:

> In the event of failure by the insured [to maintain the warranted underlying policies], the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force.

In the same vein she relies on New York Insurance Law § 167 and Condition I of the policy, both of which essentially provide that USFIC may not avoid its obligations by reason of bankruptcy or insolvency of the insured. Had Industrial retained underlying insurance, Creditor argues, the retained limit would certainly have been paid. She concludes that USFIC ought not to be able to avoid liability for the fortuity that Industrial failed to acquire the warranted coverage. USFIC concedes that perhaps it would have incurred liability had Industrial obtained underlying insurance, though it notes that such liability would not have exceeded $2,330. (Industrial's underlying insurer would have contributed $250,000, Royal Indemnity would have added $137,-670, and the deficiency would have been $2,330.) For the reason that USFIC warranted in Condition P that its coverage would apply as though underlying insurance existed even in the absence of such insurance,[4] the Court will award Creditor the $2,330 she probably would have received from USFIC had Industrial acquired underlying insurance.[5]

### ORDER FOR JUDGMENT

1. Judgment will be entered in favor of Janet R. Johnson, Trustee, Judgment Creditor, and against United States Fire Insurance Company, Garnishee, in the amount of $2,330.

2. The parties will bear their own costs.

---

4. To the extent that Condition P conflicts with Condition H, creating an ambiguity, the Court construes the policy to favor the Creditor.

5. The Court notes that Creditor has not necessarily exhausted her remedies. Industrial remains liable to Creditor to the extent of her unsatisfied judgment.