586 F.2d 1291
 Janet R. JOHNSON, Trustee, Plaintiff-Appellant,
v.
UNITED STATES FIRE INSURANCE COMPANY, Defendant-Appellee.
MILGO INDUSTRIAL, INC., Defendant-Appellant,
v.
UNITED STATES FIRE INSURANCE COMPANY, Defendant-Appellee,
and
Janet R. Johnson, Trustee, Plaintiff-Appellant-Appellee.
 Nos. 78-1162, 78-1318.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 14, 1978.
Decided Nov. 17, 1978.
 
 Charles T. Hvass of Hvass, Weisman & King, Minneapolis, Minn., for appellant; Allen C. Johnson, Minneapolis, Minn., on brief.
 Michael J. Sauntry, Collins & Buckley, St. Paul, Minn., for appellee.
 Before GIBSON, Chief Judge, MATTHES, Senior Circuit Judge, and MARKEY, Chief Judge, U.S. Court of Customs & Patent Appeals.*
 MATTHES, Senior Circuit Judge.
 
 
 1
 In these appeals, appellant Janet R. Johnson and cross-appellant Milgo Industrial, Inc. (Industrial) seek an adjudication that the district court[1] erred in its construction of an "excess" insurance policy issued by appellee United States Fire Insurance Company (USFIC) to Industrial. Because this case was the subject of an earlier opinion of this court, we refrain from engaging in a detailed rendition of its complex factual background and shall recite only those facts essential to an understanding of the limited question before us.[2]
 
 
 2
 This action involves an attempt to collect a judgment recovered by appellant Johnson in a wrongful death action brought as a result of the death of her husband against Industrial, Milgo Art(s) Systems, Inc. (Arts) and others not involved in this appeal.[3] In a special verdict, the jury found that the negligence of Industrial was 55% Responsible for the death and that the negligence of Arts was 30% Responsible,[4] and awarded $505,000 in damages.
 
 
 3
 On appeal, this court vacated the judgment as to the amount of damages and remanded the case to the district court with instructions to grant a remittitur or a new trial at the election of the plaintiff, Mrs. Johnson. Johnson v. Serra, 521 F.2d 1289, 1298 (8th Cir. 1975). Mrs. Johnson agreed to a remittitur and judgment was entered against Industrial and Arts for.$390,000.
 
 
 4
 Under the Minnesota Comparative Negligence Statute, an award is apportioned among joint tortfeasors "in proportion to the percentage of negligence attributable to each . . ." for purposes of contribution. Minn.Stat.Ann. § 604.01(1). If the special verdict of the jury in the wrongful death action is applied to the judgment after remittitur, Industrial's proportionate share would be 55/85Ths (approximately 65%) of the.$390,000 judgment or $252,330. Art's share would be 30/85Ths (approximately 35%) of the.$390,000 or $137,670.[5] Royal Indemnity Company, the primary insurer of Arts, paid $250,000, or $112,330 more than Arts' proportionate share under the comparative negligence statute, to appellant Johnson in partial satisfaction of her judgment.[6] Appellant Johnson then instituted the present action in the nature of a supplemental garnishment proceeding in the district court for Minnesota against USFIC, the insurer of Industrial, to collect the balance of her judgment, or $140,000.
 
 
 5
 The parties submitted this controversy to the court sitting without a jury. After hearing evidence and considering the extensive memoranda filed by both sides fully exploring the factual and legal issues involved, Judge Larson held in a soundly reasoned opinion that appellant Johnson was entitled to recover $2,330 from USFIC and entered a judgment for that amount. Johnson v. Milgo Industrial, Inc., 458 F.Supp. 297 (D.Minn.1978). Both Johnson and Industrial have appealed from this judgment. Each asks this court to hold that USFIC is liable to Johnson for the entire amount of the judgment which remains unpaid, or $140,000.
 
 
 6
 The district court's opinion was based on a construction of a $1,000,000 "Defenders Commercial Comprehensive Catastrophe Liability Policy" issued by USFIC to Industrial which the court found "provided coverage only for losses in excess of certain retained limits which were to be determined in part by reference to the limits of coverage from other policies that Industrial agreed to procure." Johnson v. Milgo Industrial, Inc., 458 F.Supp. at 298. In other words, Judge Larson found this "umbrella" or "excess" liability policy provided that USFIC would pay the "ultimate net loss" sustained by Industrial in excess of a stated "retained limit" up to the policy limit of $1,000,000. "Ultimate net loss" was defined by the policy to be(1) All sums which the insured, or any company as his insurer, or both, Become legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury, property damage or advertising liability to which this policy applies . . . (emphasis added)
 
 
 7
 plus certain expenses incurred by the insured in defending a suit.
 
 
 8
 The "retained limit" consisted of a $250,000 "primary" or "underlying" liability insurance policy which Industrial agreed to procure from the Aetna Casualty and Surety Company. Although Industrial failed to obtain the Aetna policy and had no other primary liability coverage, the district court held that the USFIC policy required that USFIC's liability be determined as if the Aetna policy had been in effect.[7]
 
 
 9
 In applying the USFIC policy provisions to the facts of this case in order to determine USFIC's liability under that policy, Judge Larson held: (1) that although Industrial was originally jointly and severally liable for the entire.$390,000 judgment entered in the wrongful death action, the $250,000 payment by Royal Indemnity Company, the insurer of Arts, effected a Pro tanto discharge of Industrial's obligation to appellant Johnson which reduced Industrial's "ultimate net loss;" (2) that Industrial remained liable to appellant Johnson for the $140,000 unpaid balance of her judgment; and (3) that Industrial has a potential liability of $112,330 based on the Minnesota Comparative Negligence Statute which requires contribution among joint tortfeasors.[8] Minn.Stat.Ann. § 604.01(1). Thus, the court concluded that after Royal Indemnity Company paid $250,000 to appellant Johnson, Industrial was obligated to pay at most $252,330. This figure represented Industrial's " ultimate net loss." Because Judge Larson interpreted the policy to limit USFIC's liability to the amount it would have been required to pay had the underlying insurance specified in the "retained limit" actually been obtained, Judge Larson then subtracted the $250,000 "retained limit" from the $252,330 " ultimate net loss" to arrive at USFIC's liability: $2,330.[9] We agree with the district court's rationale and ultimate conclusion.
 
 
 10
 Appellant Johnson argues that the Minnesota Comparative Negligence Statute does not affect the joint and several liability of joint tortfeasors and that, therefore, Industrial is liable for the entire.$390,000 judgment. It follows, she contends, that USFIC is liable for the amount of this judgment which exceeds the $250,000 "retained limit", i. e. for $140,000. Although, as we have noted, we agree with appellant Johnson that joint tortfeasors remain jointly and severally liable under the Minnesota Comparative Negligence Statute, this does not affect the liability of USFIC. The ultimate question in this appeal is not what does Industrial owe appellant Johnson; rather, it is what does USFIC owe Industrial. It is this obligation which appellant Johnson seeks to garnish. The obligation of USFIC must be determined by the provisions of the policy it issued to Industrial. This policy provides that USFIC's liability is based on the "ultimate net loss" of its insured, Industrial, which in turn is affected by the provisions of the Minnesota Comparative Negligence Statute requiring contribution among joint tortfeasors and by the contribution made by Arts' insurer, Royal Indemnity Company. Furthermore, it is essential to bear in mind that the liability of USFIC must be computed as though Industrial had in fact obtained primary coverage of $250,000 from Aetna Casualty and Surety Company.
 
 
 11
 We do not overlook the argument made by appellants Johnson and Industrial that courts are to construe an insurance policy liberally in favor of the insured and strictly against the insurer, resolving any ambiguity in the policy to the advantage of the insured. Nevertheless, this rule of construction is not without limit:
 
 
 12
 (T)his rule does not justify abandoning principles of normal interpretation where the contract is clear, or taking such a construction as would vary the true meaning of the contract and the intention of the parties.
 
 
 13
 . . . Nor can the doctrine of liberal construction be invoked in order to permit a strained or loose interpretation of the policy provisions so as to raise an ambiguity in the contract which does not exist, or to raise a liability clearly not contemplated by the policy terms, the court having no authority, under the guise of liberal construction, to make a new contract for the parties containing provisions upon which they had not agreed . . . . The court is unwarranted in using any guide other than the common and ordinary meanings of the words employed in making its determination of liability or nonliability under the liberal construction rule, and taking a strained or unwarranted interpretation of the words employed in order to raise an ambiguity would be unjustified. The doctrine of liberality does not operate to deprive such terms of their ordinary significance. (footnotes omitted).
 
 
 14
 13 J. Appleman, Insurance Law and Practice, § 7402 (1976). See also 11 G. Couch, Insurance, § 44:7 (2d ed. 1963).
 
 
 15
 Indeed, a number of the cases cited by appellants Johnson and Industrial recognize these limitations on the general rule requiring liberal construction of insurance policies.[10] See, E. g., Government Employees Insurance Co. v. Kligler, 42 N.Y.2d 863, 397 N.Y.S.2d 777, 366 N.E.2d 865 (1977); State Farm Mutual Automobile Insurance Co. v. Westlake, 35 N.Y.2d 587, 364 N.Y.S.2d 482, 324 N.E.2d 137 (1974); Walters v. Great American Indemnity Co., 12 N.Y.2d 967, 238 N.Y.S.2d 960, 189 N.E.2d 495 (1963); Continental Insurance Cos. v. Transport Insurance Co., 52 A.D.2d 210, 383 N.Y.S.2d 754 (1976).
 
 
 16
 A careful review of the record convinces us that the district court correctly resolved this controversy and properly interpreted the USFIC policy in light of the factors we have discussed. The judgment of the district court awarding appellant Johnson $2,330 is affirmed.
 
 
 
 *
 The Honorable Howard T. Markey, Chief Judge, United States Court of Customs & Patent Appeals, sitting by designation
 
 
 [1]
 The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota
 
 
 [2]
 For a full discussion of the facts, See Johnson v. Serra, 521 F.2d 1289 (8th Cir. 1975); Johnson v. Milgo Industrial, Inc., 458 F.Supp. 297 (D.Minn.1978)
 
 
 [3]
 Mrs. Johnson's husband was killed when a large metal sculpture which he was assembling fell on him. The sculpture was fabricated by Industrial and sold by Arts. Mrs. Johnson initially sued her husband's employer, the artist and an engineering firm in addition to Industrial and Arts
 
 
 [4]
 The artist and the engineering firm were found to be free of negligence by the jury. Although the jury found that the negligence of the employer was 15% Responsible for the death of Mrs. Johnson's husband, because the employer was covered by a workmen's compensation plan, he was not required to contribute to the judgment
 
 
 [5]
 This apportionment is relevant only to the right of one tortfeasor to contribution from another. The statute explicitly provides that each tortfeasor "shall remain jointly and severally liable for the whole award." Minn.Stat.Ann. § 604.01(1)
 
 
 [6]
 USFIC states in its brief that a claim for contribution has been brought in New York against USFIC by Royal Indemnity Company. We express no opinion on the merits of that claim
 
 
 [7]
 Although USFIC argues in its brief that it owes nothing because Condition H of the policy makes actual payment of the "retained limit" by Industrial or its underlying insurer a condition precedent to USFIC's obligation to pay any excess, USFIC did not appeal from the district court's judgment. The rule is inveterate and certain that in the absence of a cross-appeal, an appellee cannot "attack the decree (of the trial court) with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary . . . ." United States v. American Ry. Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924); Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 191, 57 S.Ct. 325, 81 L.Ed. 593 (1937); Joseph v. Norman's Health Club, Inc., 532 F.2d 86, 88 n.2 (8th Cir. 1976); Hadfield v. Ryan Equipment Co., 456 F.2d 1218, 1222 (8th Cir. 1972); State Farm Mutual Automobile Ins. Co. v. Pennington, 324 F.2d 340, 345 (8th Cir. 1963)
 USFIC conceded in its oral argument before this court that its liability may be determined as though the Aetna policy had been obtained and the "retained limit" had been paid.
 
 
 [8]
 Royal Indemnity Company's payment exceeded the proportionate contribution required of its insured, Milgo Art(s) Systems, Inc., by $112,330
 
 
 [9]
 Judge Larson's reasoning may be illuminated by the following hypothetical which is suggested by his opinion: Suppose Industrial had obtained the $250,000 Aetna policy as it was required to do by the "retained limit" provision of the USFIC policy. When the.$390,000 judgment was entered against Industrial and Arts, Aetna would have paid $250,000 to appellant. Royal Indemnity would have paid the proportionate share of its insured, Arts, or $137,670. Thus, the two "primary" insurers of the tortfeasors would have paid $387,670 of the judgment. USFIC would then be required to pay the remainder, or $2,330
 Since the USFIC policy limits the liability of USFIC to the amount it would have been required to pay had underlying insurance been maintained, Judge Larson logically concluded that $2,330 was the limit of USFIC's liability under the facts as they existed.
 
 
 [10]
 Appellant Johnson contends in her brief that New York law is controlling on this point. The other parties do not contest this assertion