**ASSOCIATED ELECTRIC COOPERATIVE, Plaintiff,**

v.

**MUTUAL BOILER & MACHINERY INSURANCE COMPANY, Defendant.**

No. 76 CV 170–C.

United States District Court, W. D. Missouri, C. D.

June 30, 1980.

Allen W. Baker, Terry M. Evans, Jefferson City, Mo., for plaintiff.

Lawrence Zelle, Robert M. Wattson, Minneapolis, Minn., for defendant.

## OPINION AND ORDER

ELMO B. HUNTER, District Judge.

This is a suit on an insurance policy. Plaintiff is Associated Electric Cooperative, Inc., a rural electric cooperative corporation organized under the laws of Missouri, which operates an electric power plant located at Missouri City, Missouri. Defendant is Mutual Boiler & Machinery Insurance Company, a Massachusetts corporation authorized to engage in the insurance business in the State of Missouri, succeeded in interest by Arkwright-Boston Manufacturers Mutual Insurance Company. This Court has jurisdiction under 28 U.S.C. § 1332. Full trial to the Court was held on March 17–18, 1980.

On September 10, 1975, an electrical fault occurred in the No. 2 switchgear at plaintiff's power plant in Missouri City, Missouri.[1] Sensing devices detected the fault and caused circuit breakers to open and take the No. 2 transformer out of the system, thereby isolating the fault from the power supply. The system was so designed that at the moment No. 2 transformer was de-energized, the tie breaker in No. 1 switchgear closed so that the circuits originally supplied by No. 2 transformer, including the area of the fault in No. 2 switchgear, were fed by No. 1 transformer through No. 1 switchgear and interconnecting circuits. Sensing devices in the system should have detected the fault, now being fed current from No. 1 transformer, and caused the tie breaker in No. 2 switchgear to open and again isolate the fault from the power supply. However, that tie breaker did not open and the fault condition in No. 2 switchgear, supplied power by No. 1 transformer, continued and spread to No. 1 switchgear through the interconnecting circuits.

Protective devices should have opened circuit breakers to take No. 1 transformer out of the system, as had occurred previously with No. 2 transformer, but the circuit breakers remained closed, allowing the fault in No. 1 switchgear and No. 2 switchgear to be fed high levels of current through No. 1 transformer. This condition lasted approximately seven minutes before sensors at remote locations in the transmission system detected the disturbance and opened to cut off the entire plant from any source of power.

Electrical arcing in the original fault in No. 2 switchgear generated intense heat which started a fire in the area of No. 2 switchgear, giving off black, highly carbonized smoke from burning insulation. The presence of this smoke, acting as a conductor, contributed to the fault condition in No. 1 switchgear, causing more electric arcing, heat and fire. The resulting fire, which burned for three hours following the electrical disturbance, involved all the area surrounding No. 1 and No. 2 switchgear and did considerable damage to the power plant. The fire and electrical arcing destroyed the wiring of control circuits which operated the tie breaker in No. 2 switchgear and the circuit breakers to isolate No. 1 transformer. Although the locations of No. 1 and No. 2 switchgear were completely involved in the fire, the serious damage to the switchgear was caused by electrical arcing. Both switchgear were heavily damaged by arcing, parts of which vaporized, disintegrated or melted down. No. 1 transformer, which was located outside the power plant at a distance of 440 feet, was damaged by electric overload and heat. There was no evidence of fire damage to the transformer. The fire involved only the power plant and did not extend to the location of the transformer.

Plaintiff filed a claim with defendant for the damage to No. 1 and No. 2 switchgear

---

1. At the time of the accident, the plant was not generating electricity; it had been off-line for about two weeks because its variance to burn coal had expired. However, the plant remained connected to the power transmission system, so there was electric potential flowing into the plant from the various other power plants connected to the system.

and No. 1 transformer. Defendant denied coverage under the insurance policy and plaintiff filed this action.[2] The policy in question insured covered equipment and machinery against loss or damage from accident, defined as "a sudden and accidental breakdown . . . which manifests itself at the time of its occurrence by physical damage" to the machinery which necessitates repair or replacement. The policy excludes from coverage loss from "Fire concomitant with or following an Accident . . ." or "An Accident caused directly or indirectly by fire . . . ." Endorsement 1(B) contains the following additional exclusion:

> This Company shall not be liable for loss or damage, if any, caused by or resulting from Electrical Current artificially generated provided fire or explosion ensues therefrom, except that electrical arcing itself shall not be considered a fire or explosion.

Defendant denies liability based on these exclusions.

2. Also named as defendants were plaintiff's fire insurance carriers. Plaintiff subsequently negotiated a compromise settlement with the fire insurance carriers and they were dismissed from this suit.

3. If the exclusion was ambiguous and this Court free to consider extrinsic matters, *see McIntyre v. McIntyre*, 377 S.W.2d 421 (Mo. 1964), the result would be unchanged. The parties' stipulations regarding plaintiff's insurance coverage point to the inescapable conclusion that they did not intend that the risk be covered by the policy issued by defendant. The Court did not consider these extrinsic matters in concluding that liability is precluded by the plain meaning of the exclusion in Endorsement 1(B). The parties stipulated to the following facts:

1. The insurance policy at issue in this case was issued by defendant on January 15, 1974, and insured plaintiff against property damage from accident in the amount of $26,000,000.00.

2. On November 1, 1971, a group of fire insurance companies issued policies insuring plaintiff against property damage from fire for plaintiff's then total insurable interest in the amount of $106,107,177.00.

3. On July 1, 1972, the fire insurance policies were rewritten on plaintiff's then total in-

■■ Plaintiff originally argued that the words "artificially generated" contained in the exclusion in Endorsement 1(B) are ambiguous. At the conclusion of trial, however, plaintiff abandoned its claim of ambiguity and now argues that the plain meaning of the exclusion does not prevent recovery for the loss at issue. As the parties now agree that the language of the exclusion is unambiguous, the Court will confine itself to the language of the policy. *See Queen Insurance Company of America v. Meyer Milling Company*, 43 F.2d 885 (8th Cir. 1930).[3] That language must be read in such a way as to give effect to the intention of the parties to the contract, *Huth v. General Accident & Life Assurance Corporation, Ltd.*, 536 S.W.2d 177 (Mo.App., D.St.L. 1976), and must be accorded its plain and common meaning. *McNeal v. Manchester Insurance & Indemnity Company*, 540 S.W.2d 113 (Mo.App., D.St.L.1976). If policy language, particularly language in an exclusionary clause, is ambiguous, the doubt is to be resolved in favor of the insured. *Martinelli v. Security Insurance Company*,

surable interest in the amount of $214,102,-797.00.

4. The fire insurance policies noted above contained what is known as an "electrical apparatus assumption clause," which provided:
> This Company shall not be liable for loss resulting from any electrical injury or disturbance to electrical equipment or devices caused by electrical currents artificially generated unless fire ensues in electrical equipment or devices covered under this policy and then shall be liable only for direct loss to electrical equipment or devices located on the premises where such ensuing fire occurs; but if such fire does ensue, then, in consideration of the rate of premium at which this policy is written, this Company shall be liable for its proportion of direct loss caused by electricity to the said electrical equipment or devices, provided such direct loss caused by electricity and such ensuing fire exceeds the sum of $200, but only for this Company's pro rata part of the amount of such excess. The words "fire ensues" and "ensuing fire" as used in the foregoing mean self-sustaining fire which continues after the electrical currents artificially generated have been interrupted. Electric arcing and flashovers, caused by electrical currents artificially gen-

490 S.W.2d 427 (Mo.App., D.St.L.1973). However, if the language is unambiguous, that is, susceptible of only one meaning, there is no room for judicial construction; it must be accorded its plain meaning and enforced as written in the contract. *Brake v. MFA Mutual Insurance Company*, 525 S.W.2d 109 (Mo.App., D.St.L.), *cert. denied*, 423 U.S. 894, 96 S.Ct. 192, 46 L.Ed.2d 126 (1975).

■ Defendant argues that the clear language of the exclusion in Endorsement 1(B) prevents recovery on the policy for the loss at issue. There is no question that the damage to the switchgear and No. 1 transformer was caused by artificially generated electric current supplied from other generating plants in the transmission system. Therefore, there is no liability if the other condition in the exclusion is present: "provided fire or explosion ensues therefrom." "Ensuing fire" has not been defined either in the policy or by the Missouri Supreme Court. However, whether an ensuing fire is one which merely occurs *subsequent* to damage by electrical current, as argued by defendant, or one which follows as a *consequence* of an electrical disturbance, *see Aetna Insurance Company v. Getchell Steel Treating Company, Inc.*, 395 F.2d 12 (8th Cir. 1968) (applying Minnesota law), does not change the result in this case. The evidence clearly shows not only that a fire occurred at some point subsequent to the

initiation of the electrical disturbance in No. 2 switchgear, but that the fire was a direct result of the electrical arcing. It appears to the Court that the clear language of the exclusion precludes liability for this loss.

■ Plaintiff argues that the exclusion must be applied *on an individual basis* to each piece of equipment which was damaged. The exclusion, says plaintiff, operates to preclude liability for damage by electrical current to an individual piece of equipment only if that piece of equipment *also* was damaged by fire. In any accident involving electrical current and an ensuing fire, plaintiff's interpretation would require an analysis of each item damaged and a determination made of which were damaged *solely* by fire or by *both* electrical current and fire, for which there would be no liability, and which were damaged *solely* by electrical current, for which defendant would be liable on the policy.[4] That interpretation is contrary to the plain language of the exclusion. The exclusion does not require that each separate piece of equipment be damaged by fire; it requires only that fire ensue. It is presumed that every clause in an insurance policy was intended by the parties to have meaning and effect; the entire policy must be considered to determine that intent. *Sulzbacher v. Travelers Insurance Company*, 137 F.2d 386 (8th

erated, shall not in themselves constitute an ensuing fire.

5. On July 1, 1975, a group of fire insurance companies issued fire insurance policies on plaintiff's then insurable interest in the amount of $289,360,000.00. These policies were in effect until July 1, 1978 [and were in effect at the time of the accident on September 10, 1975].

6. When plaintiff requested of its insurance broker that the fire policies be issued on July 1, 1975, "plaintiff requested and intended that the policies [issued earlier on November 1, 1971, and on July 1, 1972] be duplicated and an 'electrical apparatus assumption clause' be included in said policies . . . ."

7. The fire insurance policies issued on July 1, 1975, did not have the "electrical apparatus assumption clause" when issued.

8. The fire insurance policies issued on July 1, 1975, "were all late-delivered to plaintiff after said policies were in effect and that plaintiff reasonably relied upon [its insurance broker] that the policies delivered to plaintiff contained the coverage requested and earlier provided in those policies [issued on November 1, 1971, and July 1, 1972]."

4. Plaintiff states that No. 1 transformer, which was not involved in the fire, was damaged solely by electrical current. Plaintiff also contends that No. 1 and No. 2 switchgear were damaged solely by electrical current, even though both were involved in the fire.

Cir. 1943) (applying Missouri law); *Doty v. American National Insurance Company*, 350 Mo. 192, 165 S.W.2d 862 (1942). Exclusion 3(a) precludes liability for loss from "fire concomitant with or following an accident." The clear meaning of the exclusion in Endorsement 1(B) is to preclude liability for a different type of loss, *i. e.*, damage caused by electrical current if there is an ensuing fire.

Even if this Court were able to adopt plaintiff's interpretation of the plain meaning of the exclusion in Endorsement 1(B), plaintiff would not prevail on the facts in this case. Although the testimony indicated that No. 1 and No. 2 switchgear were damaged principally by an overload of electrical current and electrical arcing, this Court could not find that the switchgear were damaged *solely* by electrical current and not damaged, at least in part, by fire. The fire was ignited by electrical arcing in both switchgear and the entire location was involved in fire. A finding that there was *no* fire damage would be contrary to the evidence. No. 1 transformer was located 440 feet from the power plant and there is no evidence of fire damage to it. However, the testimony of plaintiff's own witnesses indicated that the probable cause of the failure of the circuit breakers to isolate No. 1 transformer from the system, which in turn allowed it to overload and become damaged, was that the wiring of the control circuits was destroyed by fire and electrical arcing. Exclusion 3(b) precludes liability for loss from "an accident caused directly or indirectly by fire." A finding that the damage to No. 1 transformer was caused, directly or indirectly, by fire would have ample support in this record.

It is the conclusion of the Court that the language of the exclusion in Endorsement 1(B) is unambiguous and clearly precludes liability on the insurance policy for the loss suffered by plaintiff, which the evidence showed to be caused by artificially generated electrical current, accompanied by an ensuing fire. Accordingly, it is hereby

ORDERED that the relief prayed for in plaintiff's Complaint be, and it is hereby, denied. Judgment is to be entered in favor of defendant.