626 F.Supp. 888 (1986)
INTERCO, INCORPORATED, Plaintiff,
v.
MISSION INSURANCE COMPANY and the Hartford Fire Insurance Company, Defendants.
No. 85-643C(C).
United States District Court, E.D. Missouri, E.D.
January 3, 1986.
*889 Keith Mattern, St. Louis, Mo., for plaintiff.
Joseph Kortenhof, St. Louis, Mo., for Hartford Fire Ins.
E. Thomas Liese, St. Louis, Mo., for Mission Ins. Co.

FINDINGS OF FACT & CONCLUSIONS OF LAW
MEREDITH, Senior District Judge.
Prior to trial, the parties made the following stipulations:
1. Plaintiff, Interco, Incorporated (Interco) is incorporated under the laws of the State of Delaware, having its principal place of business in St. Louis, Missouri.
2. Defendant, Hartford Fire Insurance Company (Hartford) is organized under the laws of the State of Connecticut and has its principal place of business there.
3. Defendant, Mission Insurance Company (Mission) is organized under the laws of the State of California and has its principal place of business there.
4. The matter in controversy herein exceeds the sum of Ten Thousand Dollars ($10,000) exclusive of interest and costs, and is between citizens of different states. *890 This Court has jurisdiction pursuant to 28 U.S.C. § 1332.
5. Defendant Hartford insured College-Town, one of plaintiff's operating divisions, against certain liabilities under an insurance policy issued in Massachusetts.
6. Defendant Mission insured College-Town against certain liabilities under an umbrella insurance policy issued in Missouri.
7. On January 24, 1984, David Egol, a Vice President of College-Town was fired by Arthur Sibley, the President of College-Town.
8. David Egol filed suit against Interco and Arthur Sibley.
9. Hartford and Mission denied any coverage under their respective insurance policies, and refused to defend plaintiff in the action.
10. Plaintiff hired a law firm and eventually settled the suit.
11. After the case was settled, defendant Mission notified Interco that it would defend Interco in the suit but reserved its right to deny any coverage of damages which might be assessed.
After consideration of the pleadings, the testimony, depositions and exhibits introduced at trial, the credibility of the witnesses, the parties' supplemental briefs, and the applicable law, the Court makes the following findings of fact and conclusions of law, considering the above stipulations as incorporated thereto. Any finding of fact equally applicable as a conclusion of law is adopted as such, and conversely, any conclusion of law equally applicable as a finding of fact is adopted as such.

Findings of Fact
1. By the terms of the settlement agreement, Egol was to receive the sum of $300,315, representing $180,325 in bonus compensation, $13,661 in wages, $1,329 in business expenses, and $105,000 in damages.
2. Interco withheld the sum of $39,507 of the settlement amount for tax purposes.
3. Interco's check to Egol was for the sum of $260,808.
4. Egol endorsed the check back to Interco and paid Interco an additional $12,901 to pay the balance of a house loan which Interco had made to Egol.
5. Against Hartford, Interco seeks the sum of $105,000 for the damages amount of the settlement agreement; $73,741.01 for attorneys fees related to the damages amount; $18,024.10 for vexatious refusal to pay on a loss; interest at 9%; and attorneys fees for the present law suit.
6. Against Mission, Interco seeks the sum of $105,000 for the damages amount less the $10,000 deductible amount of the policy; $73,741.01 for attorneys fees related to the damages; $17,024.10 for vexatious refusal to pay; interest at 9%; and attorneys fees for the present suit.
7. Mission has become insolvent.
8. A California court has appointed a conservator for Mission and ordered that no law or equity actions be instituted or maintained against Mission; further, that none of Mission's property be attached or executed upon.
9. The Hartford policy provided coverage for personal injury caused by an "occurrence."
10. An "occurrence" is defined by the Hartford policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
11. The Hartford policy also covers an injury arising out of "The publication or utterance of a libel or slander or of other defamatory or disparaging material."
12. The Hartford policy contains numerous exclusions.
13. Exclusion (q) of the Hartford policy provides:
The insurance does not apply: ... (q) to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment or prospective *891 employment of such person by the named insured.
14. The Mission policy provided coverage for personal injury caused by an "occurrence."
15. An "occurrence" is defined by the Mission policy as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury ... during the policy period."
16. Egol was a high strung, emotional, highly paid person earning $700,000 per year and had developed a high reputation in the women's apparel industry.
17. Egol's complaint against Interco claimed emotional distress and upset, physical detriment, humiliation, and damage to his reputation.

Conclusions of Law
1. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.
2. The law of the state where an insurance contract was entered into controls the substantive rights of the parties; the forum's procedural rules apply. Brumbaugh v. Travelers Indemnity Company, 396 S.W.2d 740, 741 (Mo.Ct.App. 1965); Bourne v. Manley, 435 S.W.2d 420, 426 (Mo.Ct.App.1968).
3. The state where the policy was issued is the state where the contract was entered into. Tickner v. Union Insurance Company, 425 S.W.2d 483, 485 (Mo.Ct. App.1968).
4. The Hartford insurance policy was issued in Massachusetts; therefore, Massachusetts law applies to it.
5. The Mission insurance policy was issued in Missouri; therefore, Missouri law applies to it.
6. Under Massachusetts law, an injury resulting from an intentional act can be an "accident" within meaning of insurance policy if insured did not specifically intend to cause the resulting harm or was not substantially certain that such harm would occur. Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 469 N.E.2d 797, 799-800 (1984); see also Lane v. Worcester Mut. Ins. Co., 13 Mass.App. 923, 430 N.E.2d 874, 875-76 (1982) and Vappi & Co. v. Aetna Casualty & Surety Company, 348 Mass. 427, 204 N.E.2d 273, 276 (1965).
7. When he fired Egol, Arthur Sibley may or may not have specifically intended to cause the emotional and physical harm and injury to Egol's reputation, but he was substantially certain that such harm would occur.
8. The Egol firing did not constitute a defamation.
9. The firing was not an "occurrence" under the Hartford policy.
10. Insurance contracts are to be interpreted according to the fair and reasonable meaning of their words. Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 439 N.E.2d 234, 237 (1982).
11. If the insurance contract is ambiguous, doubts about the meaning of the words are to be construed against the insurance company in favor of the insured. Id.
12. Exclusions from coverage are to be strictly construed. Abernathy, supra 469 N.E.2d at 799.
13. Unambiguous terms of an exclusionary clause are not to be construed strictly against the insurer, but must be given their usual and ordinary meaning. Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 373 N.E.2d 966, 968 (1978); Royal-Globe Ins. Co. v. Schultz, 385 Mass. 1013, 434 N.E.2d 213, 213 (1982).
14. The Egol firing was related to employment by Interco.
15. The terms of Exclusion (q) of the Hartford policy are clear and unambiguous, and apply in this case.
16. Because the Egol firing was not an "occurrence" under the Hartford policy and exclusion (q) applies, Hartford was not required to defend Interco and is not required to reimburse Interco. See Terrio v. McDonough, 16 Mass.App. 163, 450 N.E.2d *892 190, 193-94 (1983) and Massachusetts Turnpike Authority v. Perini Corp., 349 Mass. 448, 208 N.E.2d 807, 813-14 (1965).
17. Under Missouri law, plain and unambiguous language in an insurance contract must be given its plain meaning. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 623 (8th Cir.1981).
18. Clear and unambiguous limitations to liability of insurer should be enforced. Missouri Terrazzo v. Iowa Nat. Mut. Ins., 566 F.Supp. 546, 553 (E.D.Mo. 1983), aff'd, 740 F.2d 647 (8th Cir.1984).
19. In insurance cases, doubt or ambiguity is to be construed against the insurer and in favor of insured, but this rule has a limit; a court must give effect to limitations and exclusions in the policy unless the words in the policy are ambiguous. Associated Elec. v. Mut. Boiler & Machinery, 492 F.Supp. 410, 412-13 (W.D.Mo.1980); see City of Carter Lake v. Aetna Cas. and Sur., 604 F.2d 1052, 1055-56 (8th Cir.1979) and Johnson v. United States Fire Ins. Co., 586 F.2d 1291, 1295 (8th Cir.1978).
20. The definition of "occurrence" in the Mission policy is clear and unambiguous.
21. The firing of Egol does not fall under the definition of "occurrence" in the Mission policy because it was not unexpected and unintended. See City of Carter Lake, supra at 1058-59.
22. Because the firing was not an "occurrence" under the Mission policy, Mission was not required to defend Interco and is not required to reimburse Interco. See Travelers Ins. Co. v. Cole, 631 S.W.2d 661, 665 (Mo.Ct.App.1982); Missouri Terrazzo, supra at 554-55.
23. The fact that Mission offered to defend Interco after the settlement agreement was reached does not invoke liability because their offer to defend was made after the Egol firing case had ended and because Mission reserved its rights to deny liability. See City of Carter Lake, supra at 1060.
24. Accordingly, plaintiff is not entitled to the relief prayed for and judgment will be entered for the defendants, with costs taxed against the plaintiff.